# United States Court of Appeals for the Second Circuit

August Term, 2019

(Argued: November 5, 2019
Final Submission: August 24, 2020
Decided: July 29, 2021)

Docket Nos. 18-2739, 20-2268

_____

UNITED STATES OF AMERICA,

*Appellee*,

v.

CARLOS ROSARIO,

*Defendant-Appellant*.

_____

Before:

SACK and PARK,[*] *Circuit Judges*, and RAKOFF, *District Judge*.[†]

Carlos Rosario appeals the imposition by the district court (Pauley, *J.*) of a $5,000 special assessment, pursuant to 18 U.S.C. § 3014(a), following Rosario's conviction for sexual exploitation of a minor. Rosario contends that the district court improperly considered his future earning potential in finding him "non-indigent" under section 3014(a) and that, in any event, the district court erred in making that finding. We reject both arguments and hold that the district court did

---

[*] Judge Peter W. Hall, originally a member of the panel, died on March 11, 2021. Judge Park was designated to replace Judge Hall pursuant to Second Circuit Internal Operating Procedure E(b).

[†] Judge Jed S. Rakoff of the United States District Court for the Southern District of New York, sitting by designation.

not err by (1) considering Rosario's future earning potential in determining indigency under section 3014(a), or (2) finding him to be non-indigent within the meaning of the statute. We therefore **AFFIRM** the imposition of the special assessment.

Judge Rakoff concurs in a separate opinion.

PHILIP L. WEINSTEIN (Matthew B. Larsen, *on the brief*), Federal Defenders of New York, Inc., New York, NY, *for Defendant-Appellant*.

JUSTIN V. RODRIGUEZ (Anna M. Skotko, Alexandra Rothman, *on the brief*), *for* Audrey Strauss, United States Attorney for the Southern District of New York, New York, NY, *for Appellee*.

PARK, *Circuit Judge*:

Carlos Rosario pled guilty in the United States District Court for the Southern District of New York to three offenses stemming from his sexual exploitation of a minor. As part of Rosario's sentence, the district court (William H. Pauley III, *J.*) ordered Rosario to pay a $5,000 special assessment under the Justice for Victims of Trafficking Act of 2015 ("JVTA"), which requires courts to impose the assessment on all "non-indigent" persons convicted of specified offenses.

On appeal, Rosario argues that the district court erred by considering his future earning capacity in finding him to be "non-indigent." We disagree. The

ordinary meaning of "indigent" encompasses not only a lack of present resources, but also includes a forward-looking assessment of the defendant's "means" or ability to pay. This understanding is reinforced by the statutory scheme, which provides defendants 20 years after their release to make payment. It is also consistent with our precedent and the view of all six of our sister circuits that have addressed the issue.

The district court properly considered Rosario's future earning potential in concluding that he is "non-indigent" under the JVTA and did not otherwise clearly err in reaching that conclusion. We therefore affirm.

# I. BACKGROUND

A. <u>JVTA Assessment</u>

The JVTA provides that courts "shall assess an amount of $5,000 on any non-indigent person or entity convicted of" certain specified offenses, including "offense[s] under . . . chapter 110 (relating to sexual exploitation and other abuse of children)." 18 U.S.C. § 3014(a). The JVTA assessment is "collected in the manner that fines are collected in criminal cases," *id.* § 3014(f), and the obligation to pay the assessment continues for 20 years after the entry of judgment or defendant's release from prison, whichever is later, *id.* §§ 3014(g), 3613(b).

Funds collected under section 3014(a) are deposited in the "Domestic Trafficking Victims' Fund." *Id.* § 3014(c)–(d). The Attorney General must "use amounts available in the Fund to award grants or enhance victims' programming" under the Trafficking Victims Protection Act, the Trafficking Victims Protection Reauthorization Act, the Victims of Child Abuse Act, or the PROTECT Our Children Act. *Id.* § 3014(e).

B.     Procedural History

In 2017, Rosario pled guilty to sexual exploitation of a minor and possession and distribution of child pornography. The district court sentenced him to 240 months' imprisonment, followed by a lifetime term of supervised release. The court did not impose a fine, but it ordered Rosario to pay $12,000 in restitution, a $300 mandatory assessment, and the $5,000 special assessment under the JVTA.

Rosario appealed to this Court, challenging only the imposition of the JVTA assessment. His sole argument on appeal was that the district court plainly erred in finding him "non-indigent" under section 3014(a). He did not raise any challenge to the district court's consideration of his future earning ability.

In accordance with the procedure outlined in *United States v. Jacobson*, 15 F.3d 19 (2d Cir. 1994), we remanded this matter to the district court for further

4

proceedings because we found the record "unclear as to why and how the district court determined that Rosario was not indigent." *United States v. Rosario*, 785 F. App'x 22, 23 (2d Cir. 2019). We noted that "[w]hile the district court explicitly adopted the Presentence Investigation Report (PSR)" prepared by the Probation Department, "which had recommended the JVTA assessment, the PSR contained no specific finding with respect to Rosario's indigency." *Id.* We further observed that "the non-imposition of fines may not be determinative in establishing indigency under Section 3014(a)," and we advised the district court, if it saw fit, to "further develop the record with regard to Rosario's present financial condition and his predicted earnings capacity." *Id.*

On remand, the district court received new sentencing submissions from the parties and held a resentencing hearing. Rosario again did not argue that consideration of his future earning potential was improper under section 3014(a). The court ultimately reimposed its original sentence, including the $5,000 JVTA assessment. Tr. at 15–17.[1]

As to the JVTA assessment, the district court, citing decisions of our sister circuits, stated that a sentencing court "may consider both a defendant's financial

---

[1] Citations to "Tr." refer to the transcript of Rosario's resentencing hearing, attached as Exhibit A to Rosario's supplemental letter brief dated August 4, 2020.

situation and future earnings potential when making [the] indigency determination." *Id.* at 6. The court then found Rosario to be "non-indigent" under section 3014(a). It considered Rosario's health, outstanding debts and current assets, employment while incarcerated, "extensive prior work history," and "transferable skills" in "basic plumbing, painting, flooring and tile work." *Id.* at 7–12. The court also noted it was "mindful that [Rosario's] felony convictions and sex-offender status will likely have an adverse effect on his employability," but stated that Rosario could not "use that fact as a shield against paying the special assessment." *Id.* at 12.

## II. DISCUSSION

On appeal, Rosario again challenges the district court's imposition of the JVTA assessment. This time, he argues that the district court (1) improperly considered his future earning capacity in finding him to be "non-indigent," and (2) erred in imposing the assessment even if consideration of future earning capacity were proper. We reject both arguments.

A. The district court appropriately considered Rosario's future earning potential

First, Rosario argues that a district court may consider only the defendant's resources at the time of sentencing, and not his future earning potential, when

6

determining whether he is "non-indigent" under section 3014(a). We review the district court's interpretation of section 3014(a) for plain error because Rosario failed to raise this statutory challenge below. *Puckett v. United States*, 556 U.S. 129, 138 (2009); *United States v. Harris*, 838 F.3d 98, 103–04 (2d Cir. 2016).

The government contends that Rosario waived this argument by choosing not to argue to the district court "that Section 3014(a) prohibits consideration of future ability to pay." Gov't Suppl. Br. at 4. We disagree. Waiver is the "intentional relinquishment or abandonment of a known right," and Rosario's submissions do not reflect a "strategic, calculated decision" to abandon his statutory challenge. *United States v. Dantzler*, 771 F.3d 137, 146 n.5 (2d Cir. 2014).

1. *Statutory Text and Precedent*

We start, as always, with the statutory text. Section 3014(a) does not define "indigent," so we look to its "ordinary meaning." *Asgrow Seed Co. v. Winterboer*, 513 U.S. 179, 187 (1995). In determining ordinary meaning, "[t]ext may not be divorced from context," *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 356 (2013), and "the same words, placed in different contexts, sometimes mean different things," *Yates v. United States*, 574 U.S. 528, 537 (2015) (plurality op.).

The word "indigent" encompasses not only a person's present lack of resources, but also indicates that a person "lacks the means of subsistence." *Indigency*, Black's Law Dictionary (11th ed. 2019); *see also Indigence*, Oxford English Dictionary (3d ed. 2020) (defining the term as the "[w]ant of the means of subsistence"). As several other circuits have concluded, this "forward-looking" sense of the word "refers to a person's capabilities—whether a person has or lacks the *capacity* to earn subsistence." *United States v. Graves*, 908 F.3d 137, 141 (5th Cir. 2018) (emphasis in original); *see also United States v. Shepherd*, 922 F.3d 753, 758 (6th Cir. 2019) (noting that "an indigent person not only lives in poverty but also lacks the means—*e.g.*, skills or education—to exit poverty"). Thus, "the district court must resolve two basic questions in assessing the defendant's indigency: (1) Is the defendant impoverished *now*; and (2) if so, does the defendant have the means to provide for himself so that he will *not always* be impoverished?" *Shepherd*, 922 F.3d at 758 (emphases in original).

The Fourth, Fifth, Sixth, Eighth, Ninth, and Tenth Circuits—all of our sister circuits to have considered the issue—have held that courts may consider a defendant's future earning potential when determining indigency for purposes of imposing the JVTA assessment. *See United States v. McMiller*, 954 F.3d 670, 675 (4th

8

Cir. 2020); *Shepherd*, 922 F.3d at 758–59; *Graves*, 908 F.3d at 141; *United States v. Kelley*, 861 F.3d 790, 802 (8th Cir. 2017); *see also United States v. Janatsch*, 722 F. App'x 806, 810–11 (10th Cir. 2018); *United States v. Strange*, 692 F. App'x 346, 348–49 (9th Cir. 2017).  We agree with our sister circuits, concluding that when determining whether a defendant is indigent pursuant to section 3014(a), a court may consider both the resources available to the defendant at the time of sentencing and the defendant's future earning potential.  *See United States v. Clarke*, 979 F.3d 82, 101 (2d Cir. 2020) ("When making an indigency determination, a district court 'may consider both [the] defendant's present financial resources and those that may become available in the future.'" (quoting *United States v. Salameh*, 261 F.3d 271, 276 (2d Cir. 2001)).  We decline Rosario's invitation to hold otherwise.

    2.    *Statutory Structure and Context*

    The statutory structure of section 3014(a) supports this interpretation.  First, the defendant's obligation to pay the JVTA assessment continues for 20 years after entry of judgment or release from prison, whichever is later.  18 U.S.C. §§ 3014(g), 3613(b).  This long payment period "underscores that a district court must impose the assessment unless it finds the defendant could not pay it today—or at any point for the next twenty years."  *Graves*, 908 F.3d at 141.  "[I]t would make little

9

sense for the district court to consider *only* the defendant's financial condition at the time of sentencing" because "[t]hat snapshot in time may not accurately represent the defendant's condition five, ten, or twenty years after sentencing." *Shepherd*, 922 F.3d at 758 (emphasis in original). Even Rosario acknowledged this commonsense reading, explaining in his sentencing submission that the relevant "question" for the district court on remand was "whether between 2034 and 2054, [he] will rise above his current station to become non-indigent such that he must pay this assessment." Def.'s Sentencing Ltr. at 2, *United States v. Rosario*, No. 17-cr-306 (S.D.N.Y. Mar. 6, 2020), ECF No. 42.

The long-lasting JVTA obligation is unlike other contexts in which courts consider only a defendant's financial resources at the time of sentencing. For example, "[i]n granting court-appointed counsel, the court assesses a defendant's immediate ability to pay because 'any person haled into court, who is too poor to hire a lawyer, cannot be assured a fair trial unless counsel is provided for him.'" *Kelley*, 861 F.3d at 800 (quoting *Martinez v. Ryan*, 566 U.S. 1, 12 (2012)). Appointment of counsel is not dispositive of indigency for purposes of imposing monetary penalties. *Clarke*, 979 F.3d at 101; *see also United States v. Valdez*, 522 F. App'x 25, 33 (2d Cir. 2013) (holding that "the fact that [the defendant] had been

10

appointed counsel as an indigent defendant" was not "determinative of his ability to pay a fine"). There is no reason to consider a defendant's future earning potential in assessing his ability to pay for a lawyer now. By contrast, courts *should* consider a defendant's future earning potential when determining whether he is "indigent" for purposes of paying an obligation over 20 years into the future.

Second, section 3014 provides that the JVTA assessment "shall . . . be collected in the manner that fines are collected in criminal cases." 18 U.S.C. § 3014(f). The Sentencing Guidelines require courts to consider defendants' future earning capacity in determining whether to impose criminal fines. *See* U.S.S.G. § 5E1.2(a) (providing that courts "shall impose a fine in all cases, except where the defendant establishes that he is unable to pay and *is not likely to become able to pay any fine*") (emphasis added)). This further supports our reading of section 3014(a). *See, e.g.*, *McMiller*, 954 F.3d at 675; *Graves*, 908 F.3d at 142.

Rosario argues that the statutory scheme cuts the other way because section 3014(a), unlike other statutes, does not explicitly refer to future earning ability. Rosario points to 18 U.S.C. § 3572(a), which instructs district courts to consider factors including "the defendant's income, earning capacity, and financial resources" in imposing a fine, and 18 U.S.C. § 3663(a)(1)(B)(i), which requires

11

courts to consider the defendant's "financial resources," "financial needs," and "earning ability" in ordering restitution. In Rosario's view, those provisions show that "Congress knows how to make potential earnings relevant," and the absence of an express reference to potential earnings in section 3014(a) suggests that Congress intended to exclude consideration of that factor. Rosario Suppl. Br. at 1.

We are not persuaded. The provisions Rosario identifies have little in common with section 3014(a). Sections 3572(a) and 3663(a)(1)(B)(i) describe factors that courts should consider in deciding whether to impose fines or restitution generally. Unlike the JVTA's $5,000 assessment, these provisions do not specify the amount of a fine or assessment for the commission of particular offenses. Nor do they condition a financial penalty on the defendant's "indigence." Most importantly, these provisions are not structured like section 3014(a) because in lieu of a finding of indigence, they provide a list of factors for courts to consider when determining whether to impose a monetary penalty at all. That Congress knew how to legislate differently for other criminal punishment purposes does not support Rosario's argument.[2]

---

[2] In fact, while sections 3572(a) and 3663(a)(1)(B)(i) list "earning capacity" (or "earning ability") as a required consideration, they both also list the defendant's "financial resources." Rosario argues that indigence should be determined *only* with reference to financial resources at

Rosario further contends that the 20-year timeframe to pay the $5,000 special assessment is a reflection of the assessment's subordination to other fines and restitution amounts, not an indication that the assessment should be imposed on a defendant who may be able to pay it in the future. Rosario Suppl. Br. at 4. We disagree. This 20-year time period is consistent with the statute's purpose because it "increase[s] the possibility [that] the assessments would be collected and used to help victims." *Graves*, 908 F.3d at 141.

Rosario also argues that Congress could not have permitted consideration of earning ability in determining indigency under section 3014(a) because "it would mean declaring almost everyone 'non-indigent.'" Rosario Suppl. Reply Br. at 4. This concern is overstated. Many defendants have no work history, are physically disabled, or are serving sentences so long that they are unlikely ever to obtain post-release employment. And it is not necessarily the case that every defendant with post-release earning potential is "non-indigent."

---

the time of sentencing, but he provides no basis for this selective parsing of sections 3572(a) and 3663(a)(1)(B)(i).

B.     The district court properly found Rosario to be "non-indigent"

Finally, Rosario contends that "[e]ven if the district court was right to consider 'future earnings potential,' it was still wrong to deem Rosario 'non-indigent.'"  Rosario Suppl. Br. at 6 (citation omitted).  Again, we disagree.

A court's determination that a defendant is "non-indigent" under section 3014(a) is a factual finding that we review for clear error.  *United States v. Jeffers*, 329 F.3d 94, 97 (2d Cir. 2003).  "We will find clear error only where we as the reviewing court on the entire evidence are left with the definite and firm conviction that a mistake has been committed."  *United States v. Dumitru*, 991 F.3d 427, 436 (2d Cir. 2021) (cleaned up).  Applying this deferential standard, we affirm the district court's indigency determination.

The district court carefully weighed the record evidence in finding Rosario non-indigent.  It noted Rosario's health, limited financial resources, outstanding debts, and other court-imposed obligations.  Against those factors, the district court considered Rosario's education, "extensive prior work history," basic vocational skills, language proficiency, and participation in training courses while incarcerated.  Tr. at 11–12.  The district court's conclusion was "plausible in light

14

of the record viewed in its entirety" and thus not clearly erroneous. *Anderson v. City of Bessemer City*, 470 U.S. 564, 573–74 (1985).

Rosario argues that his "sex-offender status" will have a negative effect on his ability to find future employment. Rosario Suppl. Br. at 6. While this may be true, the fact of Rosario's convictions for sexual offenses against children "does not compel the district court to find him indigent." *Shepherd*, 922 F.3d at 760. Section 3014(a) expressly "contemplates assessing sex offenders" by listing sex crimes against minors among the enumerated predicate offenses. *Id.* As the district court correctly observed, Rosario "cannot use his sex-offender status to shield him from paying the assessment." *Id.*; *see* Tr. at 12; *cf. United States v. Thompson*, 227 F.3d 43, 46–47 (2d Cir. 2000) (where applicable statutory provisions "specifically contemplate[d] the imposition of fines upon defendants who [would] undoubtedly be deported," defendant's post-release deportation was not a basis for vacating imposition of $5,000 fine).

Rosario also points to his $6,000 debt and $12,300 in other court-imposed obligations as evidence of indigency. But given Rosario's vocational skills and pre-incarceration record of employment, we see no clear error in the district court's determination that Rosario could successfully pay the special assessment by 2054,

20 years after his expected release from prison. Indeed, courts have affirmed the imposition of the JVTA assessment even when the defendant had a negative net worth and faced additional financial obligations upon release. *See, e.g.*, *United States v. Wandahsega*, 924 F.3d 868, 889 (6th Cir. 2019) (defendant had "no assets other than a checking account containing $200" and "$30,000 in outstanding medical bills"); *Shepherd*, 922 F.3d at 760 (defendant would owe $25,000 in restitution and as much as $30,000 in child support upon release); *Kelley*, 861 F.3d at 802 (PSR reflected defendant's "slightly negative net worth at the time of sentencing").

In sum, we hold that the district court did not clearly err in finding, after careful consideration of Rosario's present financial position and likely future earnings, that Rosario is "non-indigent" under section 3014(a).

## III. CONCLUSION

For the reasons set forth above, we affirm the district court's imposition of the $5,000 special assessment pursuant to 18 U.S.C. § 3014(a).

RAKOFF, *District Judge*, concurring:

I concur that we should affirm the district court's imposition of the $5,000 special assessment on the Defendant under the Justice for Victims of Trafficking Act (JVTA), but I would do so only by applying plain error review. I write separately to explain why I remain unpersuaded by the reasons articulated by the panel majority for interpreting "indigent" in 18 U.S.C. § 3014(a) to permit speculation about a defendant's future earning potential. Instead, I would construe the statute to require that a district court find a defendant to be non-indigent at the time of sentencing before imposing the JVTA special assessment.

## STATUTORY BACKGROUND

Under the JVTA, a sentencing court "shall assess an amount of $5,000 on any <u>non-indigent</u> person or entity" convicted of offenses in one of five categories. 18 U.S.C. § 3014(a) (emphasis added). The special assessments collected under the JVTA go, not to direct victim compensation, but rather to a federally administered fund that awards grants for victims' programming. *See id.* § 3014(c)-(e). The JVTA specifies that the assessment imposed on a defendant "shall … be collected in the manner that fines are collected in criminal cases, including the mandatory imposition of civil remedies for satisfaction of an unpaid fine." *Id.* § 3014(f).

Pursuant to the standard civil remedy provision, "the liability to pay a fine shall terminate the later of 20 years from the entry of judgment or 20 years after release from imprisonment of the person fined, or upon the death of the individual fined." *Id.* § 3613. However, the JVTA places the special assessment at the end of the line for collection, specifying that the "assessment … shall not be payable until the person subject to the assessment has satisfied all outstanding court-ordered fines, orders of restitution, and any other obligation related to victim-compensation arising from the criminal convictions on which the special assessment is based." *Id.* § 3014(b).

**DISCUSSION**

Following our remand to the district court for further development of the record regarding "why and how [it] determined that Rosario was not indigent," *United States v. Rosario*, 785 F. App'x 22, 23 (2d Cir. 2019), Rosario again challenges the district court's imposition of the JVTA assessment. He argues that the district court improperly considered his future earning potential in finding him to be "non-indigent."

For the reasons set forth below, I agree with Rosario that district courts should not speculate about a defendant's future earnings potential in assessing

2

whether he is "indigent" and so excused from section 3014(a)'s special assessment. But Rosario did not raise this statutory construction challenge below, and thus his appeal is subject to plain error review. Since neither this Court nor the Supreme Court had yet construed the scope of a district court's inquiry under section 3014(a)'s indigency exception, the district court did not plainly err. I therefore concur in affirming imposition of the $5,000 special assessment.

**Section 3014(a)'s Exception for "Indigent" Defendants**

Like the panel majority, I begin with the text of the JVTA's "indigency exception," *United States v. Haverkamp*, 958 F.3d 145, 150 n.3 (2d Cir. 2020). The statute speaks in the present tense, directing the district court to assess whether the person or entity being sentence is "non-indigent," not whether a defendant might become non-indigent at some future date. However, the JVTA provides no definition for the term "indigent." Therefore, like the panel majority, I look to the "ordinary meaning" of "indigent." *Asgrow Seed Co. v. Winterboer*, 513 U.S. 179, 187 (1995). *See ante* at 7.[1] Someone is "indigent" if he is a "poor person." Black's Law Dictionary (11th ed. 2019). Numerous dictionaries share a focus on whether a person is *currently* "[l]acking the necessaries of life; in needy circumstances;

---

[1] "Ante" refers to the majority opinion.

3

characterized by poverty; poor, needy." *Indigent*, Oxford English Dictionary (3d ed. 2021). *See also, e.g.*, *Indigent*, American Heritage Dictionary (5th ed. 2020) ("Experiencing want or need; impoverished"); *Indigent*, Cambridge Academic Content Dictionary (2017) ("having no money or anything else of value"). Each of these definitions of the statutory term—indigent—directs the reader to consider what a person presently *has*, relative to what he needs. None of these dictionaries invites the reader to speculate as to whether a person may earn more in the future in determining whether he is "indigent."

The panel majority imports a "forward-looking" meaning by departing from the conventions of careful textual analysis. It finds references to the "means of subsistence" in definitions of cognates that do not themselves appear in Section 3014(a). *See ante* at 7-8 (citing *Indigency*, Black's Law Dictionary (11th ed. 2020); *Indigence*, Oxford English Dictionary (3d ed. 2020)). It is "significant" that "in ordinary usage," cognates, like adjectival and nominal forms of the same word, "may have meanings as disparate as any two unrelated words." *FCC v. AT&T, Inc.*, 562 U.S. 397, 403 (2011).

The panel opinion's reliance on other circuits' textual exegeses is similarly unpersuasive. In *United States v. Graves*, for instance, the Fifth Circuit relied on an

4

edition of Webster's New International Dictionary from 1954, which defined "indigent" as including someone who is "'[d]estitute of … *means* of comfortable subsistence.'" 908 F.3d 137, 141 (5th Cir. 2018) (quoting *Indigent*, Webster's New International Dictionary 1266 (2d ed. 1954)) (alteration and emphasis in original). But Webster's now defines "indigent" as "being in a condition of indigence; being poor usually without being destitute," following the contemporary trend by considering only present resources. *Indigent*, Miriam-Webster's Unabridged Dictionary, https://unabridged.merriam-webster.com/unabridged/indigent (last visited July 14, 2021). The Sixth Circuit case cited by the panel opinion similarly relies on decades-old definitions of "indigent" (along with contemporary definitions of "indigency") to infer a that the "defendant [must be] impoverished *now*" and lack "the means to provide for himself so that he will … *always* be impoverished." *United States v. Shepherd*, 922 F.3d 753, 758 (6th Cir. 2019). However, this Court has insisted that an undefined statutory term "is properly construed according to its contemporary dictionary definition," *State v. Dep't of Justice*, 951 F.3d 84, 106 (2d Cir. 2020), because contemporary sources are more likely to reflect the term's ordinary meaning at the time the statute took effect. Since the JVTA was enacted in 2015, I would privilege contemporary dictionaries,

5

which define someone as "indigent" if he is experiencing poverty at the time of sentencing, without speculating whether he might one day earn enough to no longer be considered poor.

Nor am I persuaded by the inferences that the panel opinion draws from statutory structure. The panel opinion infers that future earnings capacity is relevant because "the defendant's obligation to pay the JVTA assessment continues for 20 years after entry of judgment or release from prison." *Ante* at 9; *accord Graves*, 908 F.3d at 141; *Shepherd*, 922 F.3d at 758. The twenty-year termination of a defendant's liability for the special assessment arises through the existing provision for collection of criminal fines through civil remedies. *See* 18 U.S.C. § 3613(b). That the JVTA employs an existing, time-limited statutory tool for <u>collection</u> through civil remedies does not change whether the assessment should be imposed in the first instance. The twenty-year termination of liability also "'increases the possibility that the assessments [will] be collected and used to help victims,'" *ante* at 13 (quoting *Graves*, 908 F.3d at 141), in light of the special assessment's subordination to all other fines, restitution orders, and victim compensation payments arising from the same conviction, *id.* § 3014(b). This subordination, rather than a *sub silence* directive to speculate about future earning

potential as a means of narrowing the indigency exception, better explains why Congress made the obligation to pay the special assessment coextensive with the obligation to pay a criminal fine.

Moreover, the fact that the JVTA makes use of the existing statutory structures for collection of criminal fines adds credence to the textual comparisons between section 3014(a)'s indigency exception and the means testing that Congress wrote into other sections of Title 18 that impose criminal fines. As Rosario persuasively argues, several of these other means testing provisions expressly direct district courts to consider a defendant's future earning potential. For instance, "in determining whether to impose a fine, and the amount[ and] time for payment," Congress directed that a "court shall consider … the defendant's income, *earning capacity*, and financial resources." 18 U.S.C. § 3572(a)(1) (emphasis added). Likewise, in determining [non-mandatory] restitution," the court "shall consider … the financial resources of the defendant[ and] the financial needs *and earning ability* of the defendant and the defendant's dependents." 18 U.S.C. § 3663(a)(1)(B)(i)(II) (emphasis added).[2] And, as the panel opinion observes, *ante*

---

[2] Congress has also expressly directed when a court must order mandatory restitution "in the full amount of each victim's losses … *without* consideration of the economic circumstances of the defendant." *Id.* § 3664(f)(1)(A) (emphasis added). But even then, Congress provided that a

7

at 11, the Sentencing Guidelines similarly oblige courts to consider future earning potential in assessing whether a defendant is too poor for a criminal fine to be justly imposed. *See* U.S.S.G. § 5E1.2(a). These express references to future earning potential in other provisions of Title 18 indicate that "Congress has shown that it knows how to adopt the omitted language or provision." *Rotkiske v. Klemm*, 140 S.Ct. 355, 361 (2019). In this circumstance "[a]textual judicial supplementation is particularly inappropriate." *Id.* Since the contemporary, ordinary meaning of "indigent" refers only to present poverty, and these variations in provisions of Title 18 should be treated as meaningful, this Court should not add consideration of future earnings capacity to the text of section 3014(a), thereby substantially narrowing the JVTA's exception for indigent defendants.[3]

The panel opinion offers reasons not to infer that Congress's omission here constitutes meaningful variation, but they are unpersuasive. Congress invited the

court ordering such restitution may consider future earnings capacity by "direct[ing] the defendant to make nominal periodic payments if the court finds from facts on the record that the economic circumstances of the defendant do not allow the payment of any amount of a restitution order, and do not allow for the payment of the full amount of a restitution order in the foreseeable future under any reasonable schedule of payments." *Id.* § 3664(f)(3)(B).

[3] Since the contemporary, ordinary meaning of "indigent" refers only to present poverty, it does not amount to "selective parsing" to conclude that section 3014(a)'s requirement to determine whether a defendant is indigent is analogous to the consideration of his financial resources at the time of sentencing, rather than future "earning capacity" (or "earning ability), under sections 3572(a) and 3663(a)(1)(B)(i). *Cf. ante* at 12 n. 2.

comparisons to the criminal fines statutes that Rosario urges by specifying that the JVTA's special assessment "shall … be collected in the manner that fines are collected in criminal cases," subject only to the requirement that fines, restitution, and other victim-compensation obligations be paid first. 18 U.S.C. § 3014(f), (b). The JVTA's express reference to the statutory structure governing criminal fines is more persuasive textual evidence for comparison than the fact that section 3014 specifies the amount of the special assessment, whereas sections 3572(a) and 3663(a)(1)(B)(i) do not, since they are provisions governing impositions of fines and restitution in general. *See ante* at 12. Nor should we refuse to draw inferences from these other sections of Title 18 simply because section 3014(a) directs courts to consider only a single factor in deciding whether to impose the JVTA special assessment—*i.e.*, whether the defendant is "indigent"—whereas sections 3572(a) and 3663(a)(1)(B)(i) require courts to consider factors in addition to a defendant's present economic resources. *See ante* at 12.

Finally, there is practical sense in construing "indigent" according to its ordinary meaning by restricting the assessment of whether a defendant is "indigent" to an analysis of financial resources and needs at the time of sentencing. Consideration of a defendant's earning potential once he has been released after a

lengthy prison sentence and reentered the labor market as a convicted felon is, frankly, an invitation to speculate wildly, something a district court is poorly equipped to do. This is particularly true where, as here, a defendant's prior employment history was amassed before he had a criminal record. *See* PSR ¶ 80. Rosario will reenter the labor market in 2034 with a high-school education, limited skills, federal felony convictions, and a sex-offender registration. *See* Dkt. 81 at 19 (resentencing transcript). It is therefore unknown, indeed unknowable, what Mr. Rosario's financial condition will be between 2034, when he is expected to leave federal prison, and 2054, when his liabilities from this sentence will terminate. What is certain, however, is that (considering only his present financial condition) Mr. Rosario was in poverty at the time of sentencing. As the district court acknowledged, the pre-sentence investigation reported that Rosario had a negative net worth of approximately $6,000. *Id*. at 20. Against this backdrop, the court's finding under section 3014(a) that Rosario was not indigent depended entirely upon "his future earnings." *Id.* As Rosario argues, construing "indigent" to permit such speculation collapses section 3014(a)'s indigency exception and make it a virtual dead letter. Only those defendants so disabled as to be undeniably bereft of all future earning potential would qualify. Permitting consideration of

future earning potential therefore conflicts with the plain meaning of section 3014(a) and produces a result at odds with the manifest intent of Congress not to impose additional fines on people already living in poverty.

**Plain Error Analysis**

Notwithstanding my disagreement over the proper inquiry under section 3014(a)'s indigency exception, I still vote to affirm because the district court did not plainly err.

As the panel opinion accurately explains, we review the district court's statutory interpretation for plain error because Rosario failed to raise his statutory challenge to section 3014(a) below. *Ante* at 6-7; *see United States v. Harris*, 838 F.3d 98, 103-104 (2d Cir. 2016). Among the requirements to reverse on plain error review is that the error "is clear or obvious, rather than subject to reasonable dispute." *Puckett v. United States*, 556 U.S. 129, 135 (2009). This Court has repeated explained this requirement by stating that "'for an error to be plain, it must, at a minimum, be clear under current law,' which means that 'we typically will not find such error where the operative legal question is unsettled, including where there is no binding precedent from the Supreme Court or this Court.'" *United States*

11

*v. Napout*, 963 F.3d 163, 183 (2d Cir. 2020) (quoting *United States v. Whab*, 355 F.3d 155, 158 (2d Cir. 2004)).

There is no question that the operative legal question in this case remained unsettled, since neither this Court nor the Supreme Court had yet construed the scope of the district court's inquiry for section 3014(a)'s indigency exception. Therefore, while I would hold that the district court erred by considering Rosario's future earning potential, this error was not plain.

**CONCLUSION**

Because the district court did not plainly err by considering future earning potential in finding the defendant "non-indigent" under 18 U.S.C. § 3014(a), I join the rest of the panel in voting to affirm the district court's imposition of the $5,000 special assessment.