**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 21-1219
_____

UNITED STATES OF AMERICA

v.

SARAH NORTON,
                    Appellant
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 5:18-cr-00171-001)
U.S. District Judge: Honorable Joseph F. Leeson, Jr.
_____

Submitted: January 25, 2022

Before: HARDIMAN, SHWARTZ, and FUENTES,
*Circuit Judges*.

(Filed: September 1, 2022)
_____

Christy Martin
Federal Community Defender Office
for the Eastern District of Pennsylvania
601 Walnut Street
The Curtis Center, Suite 540 West
Philadelphia, PA 19106
  *Counsel for Appellant Sarah Norton*

Sherri A. Stephan
Office of United States Attorney
504 West Hamilton Street, Suite 3701
Allentown, PA 18101
  *Counsel for Appellee United States of America*

_____

## OPINION OF THE COURT

_____

FUENTES, *Circuit Judge*.

  Sarah Norton, a 38-year-old woman from Connecticut, communicated for several months with a fourteen-year-old boy living in Pennsylvania. These communications became overtly sexual, and on the night of October 14, 2017, she drove from Connecticut to Pennsylvania to meet the minor. The next morning, Norton met up with the minor in a park near his home. Soon after, the minor's parents discovered Norton's communications with the minor and notified law enforcement. In April 2018, Norton was charged with attempted enticement of a minor, in violation of 18 U.S.C. § 2422(b), and travel to engage in illicit sexual conduct with a minor, in violation of 18 U.S.C. § 2423(b). In December 2019, a jury found Norton guilty of both charges. The District Court sentenced her to 168

months in prison followed by twenty years of supervised release. The Court also imposed special assessments of $200 under 18 U.S.C. § 3013 and $5,000 under the Justice for Victims of Trafficking Act of 2015, 18 U.S.C. § 3014 ("JVTA"). Norton appeals her sentence, arguing that the District Court based it on inaccurate information and thus violated her due process rights. She also asserts that the District Court erred when it imposed the $5,000 JVTA assessment because she is indigent. For the reasons below, we will affirm.

## I.

In August 2017, Sarah Norton, a 38-year-old from Connecticut, began chatting with a fourteen-year-old boy living in Pennsylvania on a PlayStation gaming console. Norton was aware the minor was fourteen years old, and she falsely represented herself as being twenty-five years old. Norton kept exchanging messages with the minor for several months, sending increasingly sexually explicit messages[1] and pushing to see the minor in person.

---

[1] Some of the recovered messages included:

> Norton: Just try and forgive me after I get done with you, especially the first time[] we do it, 'cause I'm sexually frustrated because of you and you're a virgin . . . .

> Norton: Baby, you have no idea what is in store for you, thank God[] you're young and will be able to get it back up for me quick, 'cause you're gonna cum real fast.

Late on October 14, 2017, Norton traveled from Connecticut to Pennsylvania and checked into a hotel in Kutzown, Pennsylvania. The following morning, Norton met up with the minor for approximately two hours in a park near his home. That meeting was cut short because the minor had to go to lunch with his father and stepmother. Norton waited in the area for the minor to return from lunch. The parties contest exactly where she waited. Norton testified that she went back to the hotel and then to a festival at Orchard Farms. At sentencing, however, the Government argued that the "trial evidence," including "GPS records," "conclusively put[] her in th[e] park" waiting for the minor.[2]

The minor attempted to go back to the park after lunch but was stopped by his father. At that time, the minor's parents checked his electronic devices, including his phone and video games, and found the messages between the minor and Norton. The minor's parents then notified law enforcement and gave them consent to examine the minor's electronic devices.

In April 2018, Norton was indicted by a grand jury and charged with attempted enticement of a minor, in violation of 18 U.S.C. § 2422(b), and travel to engage in illicit sexual conduct with a minor, in violation of 18 U.S.C. § 2423(b). Norton proceeded to trial, where she testified that she did not travel to Pennsylvania with the intent to have sex with the minor. Norton, however, admitted that she traveled to

App. 358. Because the specific content of the "highly sexualized, graphic, and indeed crude" messages Norton sent to the minor is irrelevant to the issues on appeal, we do not detail it in full here. Appellant's Opening Br. at 5 n.2.
[2] App. 548, 566.

4

Pennsylvania to meet him, and did not object to the Government's cell site evidence.[3] She also admitted to sending the minor sexually explicit messages. On December 11, 2019, the jury found Norton guilty of both charges.

After briefing and a hearing, the District Court found Norton's Guidelines range to be 151 to 188 months of imprisonment. That calculation included a two-point enhancement for misrepresenting her age to the minor, U.S.S.G. § 2G1.3(b)(2)(A); a two-point enhancement for using a computer to perpetrate the offense, U.S.S.G. § 2G1.3(b)(3)(A); and a two-point enhancement for obstruction of justice for making a materially false statement during her trial testimony, U.S.S.G. § 3C1.1. Norton objected to the two-level enhancements for misrepresenting her age to

---

[3] Janet Smilowski, a Criminal Intelligence Analyst with the Lehigh County District Attorney's Office, testified about the location of Norton's cellphone on October 14 and 15, 2017. Smilowski explained that cellphones "ping" off cell towers, which enables someone to figure out approximately where the cellphone is at any given time. The Government introduced several exhibits showing maps created from Norton's cellphone records, which Smilowski testified showed Norton leaving Connecticut, traveling to Pennsylvania, and arriving in Pennsylvania. Smilowski also testified that on October 15, 2017 at 10:15 a.m. the cellphone was in Breinigsville, Pennsylvania (around the park where Norton met the minor), and that at 12:05 p.m. it was in Kutztown, Pennsylvania (around the hotel where Norton was staying). Most relevant to this appeal, Smilowski testified that at 2:15 p.m., Norton's cellphone was pinging in the vicinity of the park where Norton met with the victim earlier that day.

5

the minor and for making a materially false statement during her trial testimony. Norton's counsel continued to press Norton's contention that she did not travel across state lines to have sex with the minor and argued that Norton's misrepresentation of her age had no effect on the offense.

The Government responded that Norton's lie about her age was a key factor that enabled her to commit her crimes. The Government also asserted that, because the jury found Norton guilty of travel to engage in illicit sexual conduct with a minor, it also concluded, beyond a reasonable doubt, that Norton necessarily lied when she testified otherwise. Next, the Government argued that Norton lied in other ways, including by testifying at trial that she never went back to the park to meet the minor in the afternoon, when, in fact, she did. According to the Government:

> [A]t 3:31 p.m. – she's saying: She's about to leave, so you're sure about not seeing me? Now, the victim's parents already knew what was going on, so the victim is not responding at this point. At 3:55, she said: Okay, I waited some more and no reply. I feel so, so very stupid. At 3:29, she said: I've waited long enough for empty promises. And what we know during this time, is that when she is sending these text messages, her phone is hitting in the same park she met the victim in that morning. So, the trial evidence conclusively puts her in that park at that time, where she said, she was not. That is a complete perjured statement. Your Honor, again, I don't think it gets any more clear than that, she was there, her text messages prove it,

she wasn't on her way home at that point in time, she was sitting in the park waiting for the victim, telling him, she feels stupid and where is he?[4]

---

[4] App. 548. When discussing the 3553(a) sentencing factors at sentencing, the Government reiterated similar arguments in response to Norton's counsel's continued argument regarding Norton's contention that she "did not travel across state lines to engage in sex with this minor." App. 561–62. It stated:

> The one thing that I think keeps coming up over and over and over again, obviously, is that she had no sexual intent, that was not part of this, she denies it to this day, that she did not go back to the park that afternoon. Again, as I already mentioned in my argument as far as the objections to the PSR, we already know that she went back to the park, a fact that they continue to represent, did not happen. We know it as fact, we know it from her texts, we know it from the GPS records, she went back to the park, they continue to put that forward . . . . Once again, your Honor, we know that she was waiting in the park for him and texting him, where are you? I feel so stupid.

App. 566–67. Additionally, in its sentencing brief, the Government asserted that "[a]t trial, she testified that she met the victim in the park on October 15, realized it was wrong, and had no intentions of seeing him again that day. The evidence adduced at trial showed these self-serving claims to be lies." App. 511.

7

The District Court overruled Norton's objections and sentenced her to 168 months in prison followed by twenty years of supervised release. It also imposed a special assessment of $200 under 18 U.S.C. § 3013 and a special assessment of $5,000 under the JVTA. In imposing this sentence, the District Court stated:

> As to the nature and circumstances of the offense, the defendant's sexually-explicit communications with the minor—the victim—occurred over several months.
>
> The defendant misrepresented her age and the fact that she did not have children in order to entice the minor victim to engage in illicit sexual conduct. The defendant's chats, e-mails and text messages grew increasingly explicit over time.
>
> When the minor victim did not respond as the defendant wanted, she got angry at him.
>
> The defendant, who has three children of her own, one several years older than the minor victim and one, approximately, the same age, should have known how damaging her conduct would be to a fourteen-year-old boy.
>
> The letter from the minor victim's father, who was also, himself, impacted by the defendant's crimes, has explained in detail, the negative behavioral changes in the minor victim, both at home and in school that resulted from the defendant's conduct.

8

The minor victim talked about suicide and running away. The minor victim was put on medication and was diagnosed with certain medical conditions. Despite counseling and the passage of time, the minor victim's father remains concerned about his son's safety.

Even now, the defendant fails to recognize the seriousness of her conduct and has refused to fully accept responsibility for her actions.[5]

Although the District Court found that Norton could not pay a fine, it still imposed the JVTA assessment, finding that Norton had "the ability to pay a JVTA assessment over the length of her sentence" considering that she "can work while incarcerated and again, after her release as well as her education and work history."[6] It recommended that Norton participate in the Bureau of Prisons' Inmate Financial Responsibility Program and make a minimum payment of $25.00 per quarter towards the assessment.

Norton timely appealed her sentence, arguing that her due process rights were violated because the District Court based her sentence on inaccurate information. She also argues that the District Court erred when it imposed a $5,000 JVTA assessment because she is indigent. Because Norton did not object to these alleged errors during her sentencing hearing, the errors were not preserved. Norton raises these issues for the first time on appeal.

---

[5] App. 575–76.
[6] App. 577.

## II.

The District Court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction over this appeal under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).[7] We review unpreserved objections arising out of sentencing hearings for plain error:[8]

> To establish eligibility for plain-error relief, a defendant must satisfy three threshold requirements. *First*, there must be an error. *Second*, the error must be plain. *Third*, the error must affect "substantial rights," which generally means that there must be "a reasonable probability that, but for the error, the outcome of the proceeding would have been different." If those three requirements are met, an appellate court may grant relief if it concludes that the error had a serious effect on "the fairness, integrity or public reputation of judicial proceedings."[9]

---

[7] *United States v. Bell*, 947 F.3d 49, 53 (3d Cir. 2020).

[8] *United States v. Nappi*, 243 F.3d 758, 761 (3d Cir. 2001); *see also United States v. Couch*, 291 F.3d 251, 252–53 (3d Cir. 2002).

[9] *Greer v. United States*, 141 S. Ct. 2090, 2096–97 (2021) (citations omitted).

III.

A.

"[I]t is well settled that a defendant has a due process right to be sentenced based upon accurate information."[10] Indeed, "we have explained that information relied upon at sentencing must have 'sufficient indicia of reliability to support its probable accuracy.'"[11] The Supreme Court has held that "facts relevant to sentencing [should] be proved by a preponderance of the evidence," and that "application of the preponderance standard at sentencing generally satisfies due process."[12] Thus, due process is violated when the district court sentences a defendant based on information about her that is "materially incorrect."[13] However, due process is not violated where the district court does not rely on any allegedly incorrect information.[14]

---

[10] *Nappi*, 243 F.3d at 763 (citing *Townsend v. Burke*, 334 U.S. 736, 741 (1948) and *Moore v. United States*, 571 F.2d 179, 183 (3d Cir. 1978)).

[11] *United States v. Berry*, 553 F.3d 273, 280 (3d Cir. 2009) (quoting *United States v. Warren*, 186 F.3d 358, 364–65 (3d Cir. 1999)).

[12] *United States v. Watts*, 519 U.S. 148, 156 (1997) (per curiam).

[13] *Moore*, 571 F.2d at 183.

[14] *See United States v. Jackson*, 649 F.2d 967, 981–82 (3d Cir. 1981) ("The court's statement that it would 'take into consideration' all of the trial testimony, the presentence report, and 'what I heard here today' does not equate with reliance on extensive and materially false information."); *see also Moore*, 571 F.2d at 183 n.7 (noting that a defendant's constitutional

Norton asserts that her due process rights were violated because the District Court sentenced her based on certain false contentions by the Government during sentencing. Specifically, Norton asserts that the Government falsely contended (1) that she lied when she testified that she had no intention of meeting the minor after lunch, and (2) that the evidence showed, contrary to her testimony, that Norton returned to the same park to meet the minor after lunch. Norton argues first that she never testified that she had no intention to meet up with the minor after lunch, and second, that the cell site evidence did not conclusively show that she returned to the park to meet the minor after lunch. She contends that the Government's alleged lies were "critically relevant to the district court's weighing of the sentencing factors and the length of imprisonment that Ms. Norton should face," and that the District Court considered these materially incorrect facts when it sentenced her.[15]

Norton's due process argument is without merit. The Court did not mention either of the two allegedly materially incorrect facts when responding to Norton's objection to the two-point enhancement for obstruction of justice or in analyzing the 3553(a) factors. In fact, when responding to Norton's objection to the two-point enhancement for obstruction of justice, the District Court stated that it was "of

rights were not violated where the trial court explicitly stated that it did not rely on the "allegedly false or unreliable information" in sentencing the defendant); *United States v. Ferguson*, 876 F.3d 512, 517 (3d Cir. 2017) (explaining that, "[i]n order to show plain error," the defendant had to "bridge the gap between reference and reliance").

[15] Appellant's Opening Br. at 24.

the view that, this [enhancement] was properly applied, because the defendant provided the jury with materially-false testimony, that she never intended to engage in sexual activity with the minor victim," and that "[w]hen questioned about the extremely graphic and sexual messages she sent to the minor victim . . . [she] testified that she was only playing. The number and content of these messages refute this."[16] The District Court observed that "by convicting the defendant of Count 2, the jury necessarily rejected the defendant's testimony on this material issue."[17]

When analyzing the 3553(a) factors, the Court focused on (1) the length of the communications with the minor; (2) the fact that Norton misrepresented her age and whether she had children to the minor; (3) the nature of the messages to the minor; (4) the fact that Norton had a child about the same age as the minor and thus should have known how damaging her conduct would be to the minor; (5) the negative behavioral changes in the victim; and (6) Norton's failure to accept responsibility. At no time did the Court mention her alleged testimony about her intentions to meet up with the minor after lunch or whether she returned to the park after lunch. To the contrary, the Court's statement that Norton "refused to fully accept responsibility for her actions" was apparently based on Norton's continued assertions that she did not travel with the intent to have sex with the minor and her statements at sentencing attempting to excuse her behavior.[18]

---

[16] App. 550.
[17] *Id.*
[18] App. 576.

13

Thus, the District Court did not violate Norton's due process rights by sentencing her based on inaccurate information.

## B.

Norton also challenges the District Court's imposition of a $5,000 assessment under the JVTA. Norton argues that (1) the District Court applied the incorrect legal standard in assessing her indigency when it considered prison wages; (2) the District Court's non-indigency finding conflicts with the Court's decision not to impose a fine; and (3) she is indigent. Because Norton did not preserve this issue at sentencing, we review for plain error.[19]

We first reject Norton's argument that the District Court applied the incorrect legal standard in assessing Norton's indigency when it considered prison wages.

As always, we begin with the statutory text. Section 3014 states that a district court "shall assess an amount of $5,000 on any non-indigent person . . . convicted of an offense under . . . chapter 110 (relating to sexual exploitation and other abuse of children)."[20] These assessments are "collected in the manner that fines are collected in criminal cases," and terminate twenty years from the entry of judgment or twenty years after the defendant is released from prison, whichever is

---

[19] *See supra* notes 8–9 and accompanying text.

[20] 18 U.S.C. § 3014(a)(3). Norton concedes that chapter 110 includes the offenses charged in this case, 18 U.S.C. §§ 2422, 2423.

later.[21]  The JVTA, however, does not define what it means to be "indigent."  Thus, we look to the term's "ordinary meaning."[22]

Indigency encompasses both a person's current lack of resources, as well as a "lack[] [of] means of subsistence."[23] The latter "forward-looking" sense of the word "refers to a person's capabilities—whether a person has or lacks the *capacity* to earn subsistence."[24]  As a result, in assessing whether a defendant is indigent, the district court must resolve two basic questions: "(1) [i]s the defendant impoverished *now*; and (2) if so, does the defendant have the means to provide for himself so that he will *not always* be impoverished?"[25]  The statutory text of the JVTA therefore supports allowing district

---

[21] 18 U.S.C. §§ 3014(g), 3613(b).

[22] *Encino Motorcars, LLC v. Navarro*, 138 S. Ct. 1134, 1140 (2018); *Groff v. DeJoy*, 35 F.4th 162, 170 (3d Cir. 2022) (citing *Taniguchi v. Kan Pac. Saipan, Ltd.*, 566 U.S. 560, 566 (2012)).

[23] *Indigency*, Black's Law Dictionary (11th ed. 2019) ("The quality, state or condition of a person who lacks the means of subsistence; extreme hardship or neediness; poverty."); *see also Indigence*, Oxford English Dictionary (2d ed. 1989) ("Want of the means of subsistence . . ."); *Indigent*, Merriam-Webster's Online Dictionary, https://www.merriam-webster.com/dictionary/indigent (last visited Aug. 10, 2022) ("[S]uffering from extreme poverty[.]").

[24] *Graves*, 908 F.3d at 141; *see also United States v. Shepherd*, 922 F.3d 753, 758 (6th Cir. 2019) ("[A]n indigent person not only lives in poverty but also lacks the means—*e.g.*, skills or education—to exit poverty.").

[25] *Shepherd*, 922 F.3d at 758.

15

courts to consider future wages, including prison wages, in making an indigency determination under § 3014.

The statutory structure of § 3014 also supports this result. Most notably, the defendant's obligation to pay the JVTA assessment continues for twenty years after sentencing or release from prison, whichever is later.[26] Given this lengthy period, "it would make little sense for the district court to consider *only* the defendant's financial condition at the time of sentencing" because "[t]hat snapshot in time may not accurately represent the defendant's condition five, ten, or twenty years after sentencing."[27] Put another way, "[t]he duration of that statutory obligation . . . underscores that a district court must impose the assessment unless it finds the defendant could not pay it today—or at any point for the next twenty years."[28]

Lastly, most Courts of Appeals have held that an analysis of a defendant's future financial situation is warranted in making an indigency determination under § 3014.[29] We join our sister circuits and hold that district courts may consider a defendant's future financial situation, including prison wages, in making an indigency determination under § 3014. Therefore, the District Court did not err when it considered

---

[26] 18 U.S.C. §§ 3014(g), 3613(b).

[27] *Shepherd*, 922 F.3d at 758.

[28] *Graves*, 908 F.3d at 141.

[29] *See, e.g.*, *United States v. Rosario*, 7 F.4th 65, 68, 70 (2d Cir. 2021) (listing cases); *United States v. Wandahsega*, 924 F.3d 868, 889 (6th Cir. 2019) (holding that money earned while incarcerated is properly considered in assessing a defendant's ability to pay a special assessment under the JVTA).

16

prison wages in determining that Norton was non-indigent for the purposes of the JVTA.

We also reject Norton's assertion that the District Court's non-indigency finding conflicts with the Court's finding that Norton could not pay a fine under U.S.S.G. § 5E1.2.[30] This argument fails for several reasons. For one, it rests on the assumption that a criminal defendant is indigent for the purposes of the JVTA if the District Court does not impose a fine. No support exists for this assumption. Indeed, unlike the JVTA assessment, which is mandatory, the district court may elect not to impose a fine.[31] A significant number of Courts of Appeals have also upheld the imposition of a JVTA assessment even where no fine was imposed.[32] And, at least one has done so despite the District Court determining "that [the defendant] would be unable to pay a fine."[33] Simply put, there is no conflict between the District Court's non-indigency determination and its decision to not impose a fine;

---

[30] U.S.S.G. § 5E1.2(a) provides that "[t]he court shall impose a fine in all cases, except where the defendant establishes that he is unable to pay and is not likely to become able to pay any fine."

[31] *United States v. Booker*, 543 U.S. 220, 259–60 (2005) (holding that Sentencing Guidelines are advisory, not mandatory); *see also* 18 U.S.C. § 3571(a) ("A defendant who has been found guilty of an offense *may* be sentenced to pay a fine." (emphasis added)).

[32] *See, e.g.*, *Rosario*, 7 F.4th at 68, 73; *Shepherd*, 922 F.3d at 759 n.1 ("We also note that the district court's exercise of discretion to waive Shepherd's criminal fines . . . does not change our analysis.").

[33] *Wandahsega*, 924 F.3d at 889.

the Court merely could have concluded that the imposition of the mandatory JVTA assessment of $5,000 rendered Norton unable to pay an additional, discretionary fine.

Finally, we reject Norton's suggestion that the District Court erred in determining that she was not indigent for purposes of the JVTA. Norton suggests that the District Court erred in determining that she was non-indigent for the purposes of the JVTA because it found that she was indigent for the purposes of appointing counsel after she was indicted and on appeal. However, "the fact that the district court appointed [Norton] counsel is . . . not dispositive of whether [Norton] is indigent under § 3014."[34] Unlike the JVTA, "[i]n granting court-appointed counsel, the court [only] assesses a defendant's immediate ability to pay."[35] Indeed, "a criminal defendant might be unable to pay a six-figure legal bill and yet still possess the means of subsistence."[36]

As further support of her contention that she is indigent, Norton points to the fact that she "has no assets," is $33,000 in debt, and suffers from a "chronic, congenital disorder of the kidneys."[37] She also claims that "[s]he has limited vocational

---

[34] *Shepherd*, 922 F.3d at 759; *see also Rosario*, 7 F.4th at 71 ("Appointment of counsel is not dispositive of indigency for purposes of imposing monetary penalties." (internal citations omitted)).

[35] *United States v. Kelley*, 861 F.3d 790, 800 (8th Cir. 2017); *see also Graves*, 908 F.3d at 143 ("When determining whether a defendant is unable to afford counsel, a court considers 'a defendant's immediate ability to pay.'" (citation omitted)).

[36] *Shepherd*, 922 F.3d at 759.

[37] Appellant's Opening Br. at 28.

18

training and will be well into her 50's when released from prison."[38] In addition, she notes that "prior to her arrest she was living with her mother" and "may require housing upon release."[39] However, many criminal defendants have no assets and require housing upon release.[40] Moreover, the District Court specifically considered her education and work history and determined that she had the ability to pay the JVTA assessment.[41] Norton does not explain how her "chronic, congenital disorder of the kidneys" would affect her ability to work and pay the JVTA assessment.[42] And while it is true that she will likely be in her 50s when she is released from prison, she will have twenty years to pay the balance remaining on the

---

[38] *Id.*

[39] *Id.*

[40] Moreover, Norton's present financial circumstances are similar to those that courts have concluded do not compel a finding of indigency. *See, e.g.*, *Rosario*, 7 F.4th at 73 (collecting cases).

[41] *See Shepherd*, 922 F.3d at 759 (explaining that "a high school diploma *plus* additional training" evidenced a lack of indigence).

[42] *See* Appellant's Opening Br. at 28.

19

JVTA assessment.[43] Thus, we cannot say that applying the JVTA assessment to Norton was error, let alone plain error.[44]

---

[43] Assuming she participates in the Bureau of Prisons' Inmate Financial Responsibility Program and pays a minimum payment of $25.00 per quarter towards the assessment as recommended by the District Court, Norton would have approximately $3,600 left to pay once she is released from prison. That is approximately $180 per year over twenty years or about $3 per week.

[44] Norton also suggests that the District Court determined that she was indigent. No such determination was ever made. In fact, the District Court considered "that [Norton] can work while incarcerated and again, after her release as well as her education and work history" and implicitly determined that she was non-indigent when it concluded that she "ha[d] the ability to pay a JVTA assessment over the length of her sentence." App. 577.

IV.

For these reasons, we will affirm Norton's sentence. [45]

---

[45] The Government notes that the words "'shall assess on any person convicted of an offense' . . . mandate that an assessment be paid for each offense of conviction, yielding multiple assessments when a defendant is convicted of more than one offense." Appellee's Br. at 38 (citing *United States v. Johnman*, 948 F.3d 612 (3d Cir. 2020)). "However, Norton was only ordered to pay a single assessment of $5,000, despite having two separate felony convictions triggering its application." *Id.* The Government explicitly declined to appeal Norton's receipt of only a single JVTA assessment. *Id.* Even if we were to determine the District Court erred in ordering only a single assessment, we are barred from correcting this error because the Government did not cross-appeal to challenge this conclusion. *See Greenlaw v. United States*, 554 U.S. 237, 248 (2008); *see also United States v. Erwin*, 765 F.3d 219, 232 (3d Cir. 2014).