NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 20-2666
_____

UNITED STATES OF AMERICA

v.

JOHN SHOVER,
                    Appellant

_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Criminal No. 1-18-cr-00299-001)
District Judge: Honorable Yvette Kane
_____

Argued: April 16, 2021

Before: CHAGARES, JORDAN, and SCIRICA, *Circuit Judges.*

(Filed: September 14, 2021)

Frederick W. Ulrich          [ARGUED]
Office of Federal Public Defender
100 Chestnut Street
Suite 306
Harrisburg, PA  17101
        *Counsel for Appellant*

Stephen R. Cerutti, II        [ARGUED]
Office of United States Attorney
Middle District of Pennsylvania
228 Walnut Street, P.O. Box 11754
220 Federal Building and Courthouse
Harrisburg, PA  17108
        *Counsel for Appellee*

_____

OPINION[*]
_____

**SCIRICA**, *Circuit Judge*

John Shover pleaded guilty to one count of production of child pornography, in violation of 18 U.S.C. § 2251(a) and (e). The District Court sentenced Shover to 24 years in prison and imposed a special assessment of $5,000 pursuant to the Justice for Victims of Trafficking Act of 2015 ("JVTA"), 18 U.S.C. § 3014. Under the JVTA, courts must impose a $5,000 assessment against non-indigent persons convicted of certain offenses, including offenses related to the exploitation of children. Shover appeals the imposition of the $5,000 special assessment. He contends the District Court improperly based its finding of non-indigency on the availability of prison wages. Furthermore, he contends he meets the definition of indigency no matter how it is defined.

The District Court properly considered the availability of prison wages in determining indigency. But the court did not adequately address Shover's negative net worth and inability to earn future wages post-release. Accordingly, we affirm the District Court's sentence except for the imposition of the $5,000 special assessment and remand for resentencing on this sole issue.

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

# I.

Pennsylvania State Police received a report about sexual abuse involving a 14-year-old female—the adopted daughter of John Shover. Upon executing a search warrant of Shover's residence and electronic devices, police discovered six images of child pornography, five of which were of Shover's daughter. Shover waived his *Miranda* rights and admitted to creating the images and to repeated sexual abuse.

Following an indictment by a grand jury, the Magistrate Judge appointed a Federal Public Defender to represent Shover upon finding that he was financially unable to obtain counsel on his own. Shover then pleaded guilty to illegal production of child pornography in violation of 18 U.S.C. § 2251(a) and (e).

After Shover's guilty plea but before sentencing, the United States Probation Office prepared a presentence report (PSR) that provided the court with information about Shover's education, employment history, and financial condition. According to the PSR, Shover graduated from high school in 1980 and obtained a now-expired license in dairy farm inspection. From 2001 through 2016, Shover earned $20.60 per hour as a "milk tanker driver/supervisor." Shover then worked as a grocery stocker and material handler earning $9 per hour and $12.90 per hour, respectively. The PSR identified that Shover owed $11,239 on an automobile loan, $463 to a cable company, and $221,790 on a joint mortgage of his residence—now in foreclosure. Shover's only reported assets were bank accounts with a total balance of $10 and a pick-up truck valued at approximately $700. Finally, Shover, filing jointly with his wife, reported an adjusted gross income of $3,744 to the IRS in the year preceding his arrest.

3

At the sentencing hearing, the Government contended Shover could pay off the assessment over the course of his prison term due to his ability to work in prison and earn wages. Shover's counsel asked the court to find him indigent, contending the court had determined Shover was indigent for right-to-counsel purposes and the government had presented no evidence to show Shover was non-indigent. The Probation Office calculated a 292–360 month advisory guideline range and recommended Shover be subject to the JVTA special assessment, given his ability to earn wages in prison. Probation calculated the guideline range for a fine at $50,000—250,000, and concluded based on Shover's financial condition that he was "capable of paying a minimal fine below the guideline range in installments."

The District Court sentenced Shover to a sentence at the bottom of the guideline range—292 months (24 and 1/3 years)—because Shover's age (59 years) meant that he could be released after he was 80 years old. The court found Shover could not pay a fine but imposed a $100 special assessment, pursuant to 18 U.S.C. § 3013, and the $5,000 JVTA special assessment. With respect to the JVTA special assessment, the Court acknowledged Shover had been found to be indigent for the purpose of appointing counsel but implicitly found Shover was non-indigent for the purposes of the special assessment by noting that he could pay the assessment through his prison wages. This appeal followed.

**II.**[1]

Shover contends the court used the wrong legal standard in determining he is non-indigent and that it nonetheless clearly erred in finding him non-indigent.

**A.**

We begin by addressing the legal standard for determining indigency under 18 U.S.C. § 3014. Section 3014 provides that "in addition to the assessment imposed under section 3013, [a sentencing] court shall assess an amount of $5,000 on any non-indigent person or entity convicted of [an enumerated offense]." In finding Shover non-indigent, the District Court emphasized that Shover is entitled to work while in prison. *See* Joint Appendix at 33 ("[T]he court notes that the defendant . . . is entitled to work during his term of imprisonment, and the court's expectation is that he will be able to work and pay the special assessment."). Shover contends potential prison wages should not be considered in a district court's assessment of indigency under § 3014. We cannot agree.

18 U.S.C. § 3014 does not provide guidance on how a district court should evaluate indigency, but a significant number of courts of appeals have concluded that, for the purposes of determining indigency under § 3014, an analysis of a defendant's future

---

[1] Whether the District Court used the proper legal standard in assessing Shover's non-indigency is a legal question over which we exercise plenary review. *United States v. Graves*, 908 F.3d 137, 140 (5th Cir. 2018) (in the context of a JVTA special assessment); *United States v. Kadonsky*, 242 F.3d 516, 518 (3d Cir. 2001) (in the context of inability to pay a fine). Whether Shover is a non-indigent person is a question of fact that we review under the clearly erroneous standard. *See Kadonsky*, 242 F.3d at 518 (explaining that findings of fact regarding a defendant's ability to pay a fine are subject to clear error review).

financial situation is warranted.[2] A defendant's future financial situation and, thus, a district court's assessment of indigency, encompasses both potential prison wages and potential post-release earnings. *See United States v. Wandahsega*, 924 F.3d 868, 889 (6th Cir. 2019) (considering whether the defendant would be able to earn money while incarcerated to determine indigency). Prison wages, like post-release wages, are likely to impact a defendant's future financial situation. That these earnings may be small is not alone a sufficient reason to conclude otherwise. Accordingly, we believe the District Court properly considered Shover's ability to earn wages in prison.

Further, the statute's structure favors a consideration of future earning capacity because a defendant's obligation to pay the assessment lasts for at least twenty years after judgment. *See* 18 U.S.C. §§ 3014(g), 3613(b)**.** And the ordinary meaning of the term "indigent" includes a forward-looking assessment of a defendant's financial situation. *See United States v. Graves*, 908 F.3d 137, 141 (5th Cir. 2018) ("The ordinary meaning of 'indigent' therefore includes both someone who is poor today and someone who lacks the means to earn the necessaries of life in the future."); *United States v. Shepherd*, 922 F.3d 753, 758–59 (6th Cir. 2019) (drawing the inference that a defendant's future financial condition should be considered from various legal and non-legal dictionary definitions of indigent).[3]

---

[2] *See United States v. Clarke*, 979 F.3d 82, 101 (2d Cir. 2020); *United States v. McMiller*, 954 F.3d 670, 675 (4th Cir. 2020); 908 F.3d at 141–42; *United States v. Shepherd*, 922 F.3d 753, 758–59 (6th Cir. 2019); *United States v. Barthman*, 983 F.3d 318, 322 (8th Cir. 2020); *United States v. Kelley*, 861 F.3d 790, 801 (8th Cir. 2017).

[3] Black's Law Dictionary defines indigency as "[t]he quality, state, or condition of a person who lacks the means of subsistence; extreme hardship or neediness; poverty." *Indigency*, *Black's Law Dictionary* (11th ed. 2019).

Relatedly, the appointment of counsel for Shover is "probative but not dispositive" of whether he is indigent under § 3014. *Shepherd*, 922 F.3d at 759. There is a fundamental difference between a court's assessment of whether a defendant should be appointed an attorney and whether a fine or special assessment should be imposed after verdict. *United States v. Kelley*, 861 F.3d 790, 800 (8th Cir. 2017). In this context, we do not believe courts should be restricted by their initial determination on appointing counsel. *See Shepherd*, 922 F.3d at 759 ("This is a matter of common sense: a criminal defendant might be unable to pay a six-figure legal bill and yet still possess the means of subsistence.").

**B.**

Shover contends he has no burden to establish non-indigency. But in the context of the § 3014 special assessment, the burden is on the defendant to establish his or her indigency. Though § 3014 does not specifically allocate a burden, the statute directs that the special assessment be treated like a fine. *See* 18 U.S.C. § 3014(f) ("The amount assessed under subsection (a) shall . . . be collected in the manner that fines are collected in criminal cases . . . ."). In the fines context, the burden is placed on the defendant. *See* U.S.S.G. § 5E1.2(a) ("The court shall impose a fine in all cases, except where the defendant establishes that he is unable to pay and is not likely to become able to pay any fine."). Accordingly, it is a defendant's burden to show the fact of indigency in the § 3014 context.

Shover also contends the District Court did not properly address his negative net worth and ability to earn wages post release. Shover's PSR, which the District Court adopted in full and to which the government lodged no objections, established Shover had a negative net worth at the time of sentencing. As noted, the PSR identified that Shover owed $11,239 on an automobile loan, $463 to a cable company, and $221,790 on a joint mortgage of his residence—now in foreclosure. Shover's only reported assets were bank accounts with a total balance of $10 and a pick-up truck valued at approximately $700. Shover, filing jointly with his wife, reported an adjusted gross income of $3,744 in the year preceding his arrest.

Despite this description of Shover's present financial condition, the District Court—by imposing the special assessment—found Shover non-indigent, because Shover would be able to work in prison. As noted, a court may consider the availability of prison wages. In *Wandahsega*, the Court of Appeals for the Sixth Circuit, in upholding on plain error review a finding of non-indigency for a defendant with a negative net worth, noted that the defendant did not address the ability to earn money while incarcerated. 924 F.3d at 889. But defendants with negative net worth, such as Wandahsega, have generally been held to be *non-indigent* where post-release employment appeared likely.[4] In contrast, the

---

[4] *See, e.g.*, *id.* (noting the defendant "believes he will obtain employment . . . upon his release"); *Shepherd*, 922 F.3d at 760 (explaining that time will be on Shepherd's side because he will be released "well before he turns 40 and with many years of future employability"); *McMiller*, 954 F.3d at 675 ("[T]he district court properly considered McMiller's future earnings potential in imposing the special assessments."); *Kelley*, 861 F.3d at 802 ("Kelley, an Eagle Scout with a college degree, 'certainly has the education

defendant in *Barthman*—found to be indigent—had dismal post-release employment prospects because he would be nearly 80 years old, if not older, upon his release. 983 F.3d at 323. In finding Barthman indigent, the Court of Appeals for the Eighth Circuit emphasized both his age and his "substantial negative net worth" of negative $166,903. *Id*. at 322–23. We have not identified a case where a prisoner with a substantial negative net worth was found to be non-indigent solely based on the potential availability of prison wages.

We believe the District Court did not adequately address Shover's substantial negative net worth and the potential, or lack thereof, for post-release employment prospects. On the facts, *Barthman* is a similar case and instructive. Not only does Shover have a substantial negative net worth, but Shover will be over 80 years old and a registered sex-offender if he is ever released.[5] *See Barthman*, 983 F.3d at 323 ("Barthman will be nearly 80 years old, if not older, when he is released from custody. Additionally, he will be a convicted felon with several child sex offenses on his record."). Thus, Shover's post-release employment prospects may be minimal, distinguishing his case from *Wandahsega* and other cases where, regardless of prison wages, potential post-release earning capacity likely made the defendant non-indigent. Even if Shover is able to work consistently throughout his prison term, his future earning capacity may be limited

---

and skills to be employed and to earn money from which he could pay this assessment.'").

[5] Shover may never leave prison. In February 2021, he was sentenced in state court to a minimum of 27 years and 6 months and a maximum of 60 years in prison, running concurrent with his 24-year federal sentence. *See* Criminal Docket at 9–13, Commonwealth v. Shover, Docket No. CP-50-CR-0000329-2018 (Pa. C.P. Perry Cty.)

to prison wages in the range of $.12 to $.40 per hour. On remand, the District Court should consider Shover's earning capacity in conjunction with his negative net worth and future employment prospects.

## III.

For the foregoing reasons, we affirm the District Court's sentence except for the imposition of the $5,000 special assessment and remand for resentencing on this sole issue.