NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0496n.06

No. 21-1051

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

<table>
<tr><td>UNITED STATES OF AMERICA,</td><td>)</td><td rowspan="12"></td></tr>
<tr><td></td><td>)</td></tr>
<tr><td><i>Plaintiff-Appellee,</i></td><td>)</td></tr>
<tr><td></td><td>)</td></tr>
<tr><td>v.</td><td>)</td></tr>
<tr><td></td><td>)</td></tr>
<tr><td>DUSTYN WAYNE OLMSTEAD,</td><td>)</td></tr>
<tr><td></td><td>)</td></tr>
<tr><td><i>Defendant-Appellant.</i></td><td>)</td></tr>
<tr><td></td><td>)</td></tr>
<tr><td></td><td>)</td></tr>
</table>

FILED
Oct 28, 2021
DEBORAH S. HUNT, Clerk

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE WESTERN
DISTRICT OF MICHIGAN

Before: BOGGS, WHITE, and READLER, Circuit Judges.

BOGGS, Circuit Judge. Dustyn Wayne Olmstead pleaded guilty to two federal offenses related to online sexual communications involving minors. As part of his sentencing, and pursuant to the Justice for Victims of Trafficking Act (JVTA), the district court ordered Olmstead to pay two $5,000 special assessments. The JVTA assessments are mandatory for any nonindigent defendant. Olmstead asserts that he is, in fact, indigent and not required to pay. Our precedents indicate overwhelmingly that Olmstead is incorrect as a matter of law, that the district court correctly found him to be nonindigent, and that the assessments should stand. We therefore affirm.

**BACKGROUND**

Dustyn Wayne Olmstead sent sexual communications, including nude images of himself, through an online messaging service to one 13-year-old and one 14-year-old victim. During the course of those communications, he solicited nude images of his victims, one of whom—Victim

1—he had been in contact with for three years. Law enforcement became aware of Olmstead's interactions with Victim 1 when the two exchanged messages on the victim's school-issued laptop, which brought the matter to the attention of school officials. An investigation revealed Victim 2's involvement, and subsequent subpoenas to social-media companies that had hosted Olmstead uncovered suspected child pornography that he had sent to Victim 1 and others.

After his arrest, Olmstead pleaded guilty to a felony information charging him with two counts: sexual exploitation and attempted sexual exploitation of minors, in violation of 18 U.S.C. § 2251(a) and (e); and distribution of child pornography, in violation of 18 U.S.C. § 2252A(a)(2)(A) and (b)(1) and 18 U.S.C. § 2256. Because all of the statutes cited fell under Chapter 110 of Title 18 of the United States Code, each count was subject to a $5,000 special assessment pursuant to the 2015 Justice for Victims of Trafficking Act (JVTA). *See* JVTA, § 101(a), Pub. L. No. 114-22, 129 Stat. 227, 228–29 (codified at 18 U.S.C. § 3014(a)(3)) ("[T]he court shall assess an amount of $5,000 on any non-indigent person or entity convicted of an offense under . . . chapter 110 (relating to sexual exploitation and other abuse of children)."). As evident from the text, the assessment is mandatory when a defendant is nonindigent, and may not be imposed if he is indigent. *See United States v. Fowler*, 956 F.3d 431, 439 (6th Cir. 2020). A defendant's obligation to pay persists for 20 years following the end of his imprisonment. *See* 18 U.S.C. §§ 3014(g), 3613(b).

The Probation Office prepared a Pre-Sentence Report (PSR) detailing, among other things, Olmstead's financial condition and ability to pay any potential fines. The charges against him carried (in addition to the special assessments) potential fines of $50,000–$250,000 under the Sentencing Guidelines and statutes of conviction.[1] The PSR reported that Olmstead had several

---

[1] The PSR noted that while USSG § 5E1.2(c)(3) allows for a fine of $50,000–$500,000, each count carries a maximum statutory fine of $250,000, capping the range.

financial liabilities, including $2,172 in civil judgments against him and an $87 medical bill in collections, but no substantial assets. His employment history was sporadic: between 2012 and 2020 he had been unemployed for three years, but he had worked the other five, earning between $11.15 and $19.96 per hour. The PSR also noted that he had a high school diploma, a forklift operating license, and experience as a computer numerical control (CNC) operator. His position as a CNC operator during the three years preceding his arrest was his most recent and highest paying job. Based on this information, the report concluded that Olmstead could not "pay a fine below or within the advisory guideline range," i.e., any amount of the $50,000–$250,000 in statutory fines, but it did recommend assessing $5,000 under the JVTA for each of the two charged counts.

At the sentencing hearing, the district court adopted the PSR's recommendations and imposed one mandatory $5,000 JVTA assessment for each count, totaling $10,000. Olmstead's counsel objected that he was indigent; in response, the government argued that Olmstead "has shown with his employment history he is employable [and] has been able to maintain employment," and suggested he might receive money from his family. Olmstead's counsel conceded that Olmstead's circumstances could change, but he argued that earnings from prison would be inadequate and that Olmstead had no assets. The district court rejected Olmstead's arguments and declined to waive the assessments. Finally, the court declined to impose the $50,000–$250,000 fine (in line with the PSR's recommendation), finding that Olmstead did "not have the ability to pay a fine." The court sentenced Olmstead to 300 months of imprisonment followed by 10 years of supervised release.

Olmstead appealed the district court's finding of nonindigency, and we now exercise jurisdiction under 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291.

**ANALYSIS**

Since the JVTA was signed into law in 2015, this court has had occasion to address the contours of the § 3014 special assessment on at least a half-dozen occasions. The most comprehensive of these was *United States v. Shepherd*, 922 F.3d 753 (6th Cir. 2019), from which several key holdings govern our analysis here.

The first is our standard of review on appeal: a JVTA-assessment appeal presents a mixed question of law and fact. *Id.* at 757. We review the finding of indigency for clear error, meaning we will uphold the district court's finding unless "we have the definite and firm conviction that a mistake has been committed." *Id.* at 759 (quotation marks omitted) (citing *United States v. Darwich*, 337 F.3d 645, 663 (6th Cir. 2003)). However, because the district court "first had to resolve" what constitutes indigency, "[w]e review that legal question de novo." *Id.* at 757. Our legal analysis is guided by the following standard for indigency: "(1) Is the defendant impoverished *now*; and (2) if so, does the defendant have the means to provide for himself so that he will *not always* be impoverished?" *Id.* at 758 (emphases in original). The latter, future-finances analysis incorporates 18 U.S.C. § 3613(b)'s 20-year horizon for paying the assessment. *Ibid.*

The second key holding of *Shepherd* concerns which financial and circumstantial factors in the defendant's life a district court should consider when determining indigency. The *Shepherd* court made clear that defendant's retaining court-appointed counsel, additional fines imposed at sentencing, and independent financial obligations (such as debts) are all relevant indications of indigency, but none is dispositive. *Id.* at 759–60. On the other side of the analysis, a defendant's high-school diploma (or equivalent), technical training, and earnings history and potential can weigh against indigency. *Ibid.* Finally, certain considerations are not relevant at all—among them (1) the requirement that a defendant register as a sex offender (because all those assessed under § 3014 have committed sex crimes that may require registration), as well as (2) "the district court's

exercise of discretion to waive [defendant's] criminal fines." *Id.* at 759 n.1. Weighing a defendant's debts and assessed fines on the one hand, against his assets, qualifications, and past and future earnings on the other, constitutes the indigency analysis.

The third and final holding in *Shepherd* is this: there is no need for the district court at sentencing to make an explicit finding of nonindigency. It is enough that "the record makes clear that the sentencing judge listened to each argument, considered the supporting evidence, was fully aware of the defendant's circumstances and took them into account." *Id.* at 760 (quotation marks omitted). That requirement was met in *Shepherd* when the district court heard argument on the defendant's finances, education, and employment history, and justified its decision by noting the defendant's "ability to earn in the future." *Ibid.*

In Olmstead's case, then, the district court was not required to discuss Olmstead's finances in detail when it rejected his arguments of indigency. Neither party disputes that the PSR fully set forth Olmstead's financial circumstances, and the sentencing transcript shows that the district court heard arguments on Olmstead's employment history, employment prospects in prison, and present assets (or lack thereof). It is therefore clear that "the court has done its duty," *Shepherd*, 922 F.3d at 760 (quotation marks omitted), and it now falls to us to confirm that the correct standard—asking whether Olmstead (1) was impoverished at sentencing and (2) will continue to be impoverished in the future—was applied.

A brief survey of the factual circumstances in five Sixth Circuit cases that have discussed § 3014 forecloses the possibility that Olmstead is indigent. To recap, Olmstead has a high-school diploma and technical training in operating a forklift and a CNC machine. He has held jobs earning up to almost $20/hour (including for the three years prior to his arrest), but he currently owes

$2,259 in unpaid debts. His earning potential in prison is negligible.[2] Upon release from prison, he will be in his mid-fifties. Compare these facts with those of the following defendants, all of whom were found to be nonindigent for purposes of a JVTA special assessment:

- A defendant who had earned a GED but who had a net worth at sentencing of –$1,739, would owe $55,000 after release, and had only ever earned $11 per hour at most. *Shepherd*, 922 F.3d at 756, 759–60.

- A defendant whose assets and liabilities consisted of $200 in a checking account and $30,000 in outstanding medical bills and who, after release, was (by estimation of the court) capable of earning "a minimum hourly wage." *United States v. Wandahsega*, 924 F.3d 868, 889–90 (6th Cir. 2019).

- A defendant with a high-school degree and some college education who had had consistent past employment but who suffered from mental illness and, upon release, would be $35,000 in debt. *United States v. Wheeler*, 797 F. App'x 964, 966 (6th Cir. 2020).

- A defendant who had a college degree but no assets and $427 in credit card debt, and who would likely spend the rest of his life in prison. *United States v. Easterling*, 811 F. App'x 306, 310 (6th Cir. 2020).

- A defendant who had held some mechanical jobs that paid above minimum wage but had no assets, lacked a GED, was $25,000 in debt, and would owe an additional $150,000 in restitution on release from prison. *United States v. Goodin*, 815 F. App'x 860, 868 (6th Cir. 2020).

From the facts of the above cases, it is clear that Olmstead falls comfortably within the definition of a nonindigent defendant. He has nothing close to the staggering levels of personal debt and statutory restitution owed by several of the defendants previously found to be nonindigent by this court. And 18 U.S.C. § 3613(b) allows Olmstead 20 years from the end of his imprisonment to pay the assessments. When released, Olmstead will be in his mid-fifties; based on this court's precedent, a rate of $500 per year in the 2040–60 period does not seem unreasonable as a payment schedule for his JVTA assessments. *Cf. Shepherd*, 922 F.3d at 760.

---

[2] Olmstead persuasively asserts that the circumstances of prison employment, such as it is, do not allow him any opportunity to begin paying off the assessments before he is released sometime in the mid-2040s. Olmstead's opening brief details how, even in the unlikely event that he obtains the highest-paying job available in prison, virtually all of his wages would be dedicated to paying off additional mandatory payments imposed by the prison itself, rather than the JVTA assessments.

Finally, Olmstead makes much of the fact that the district court at sentencing waived his obligation to pay the $50,000–$250,000 fine under the Guidelines. *Shepherd*, however, teaches that our analysis of the financial factors that guide us in determining indigency does not change when the district court waives criminal fines at sentencing. 922 F.3d at 759 n.1. In any case, a finding of indigency is far from the only reason the district court may have waived the fines here. It is also possible that the district court reasoned that, while Olmstead could pay the $10,000 mandatory special assessments, imposing an additional fine of at least $50,000 on top of that would not be appropriate given his financial and employment histories as described in the PSR. *See Easterling*, 811 F. App'x at 310.[3] In any case, we have no reason to undertake a searching analysis of the district court's motivations here, where we review the factual finding below only for clear error.[4]

Given this, we cannot say that we are of the "definite and firm conviction that a mistake has been committed." *Shepherd*, 922 F.3d at 759. The district court thus did not err in finding Olmstead to be nonindigent and assessing the mandatory $10,000 required by the JVTA.

## CONCLUSION

For the reasons above, we **AFFIRM** the judgment of the district court.

---

[3] The *Easterling* court thought much the same:

> It is true that the court's determination that [defendant] was unable to pay a fine could provide evidence that [he] was indigent for purposes of the JVTA assessment. It is equally possible, however, that the district court merely found that [he] was not financially able to pay the fine recommended by the probation officer *because of* the imposition of the JVTA obligation.

811 F. App'x at 310.

[4] Olmstead asserts that imposing two JVTA assessments instead of one was arbitrary because the district court concluded that he was unable to pay the statutory fine. As explained previously, however, a court's waiver of criminal fines "does not change [the] analysis" of indigency under the JVTA. *See Shepherd*, 922 F.3d at 759 n.1. Furthermore, the district court clearly acknowledged that it was imposing a $10,000 obligation on Olmstead. And to the extent that Olmstead argues in his reply brief that the statute requires courts to impose one assessment per *offender* instead of one assessment per *count*, he has forfeited that argument by failing to raise it in his opening brief. *See Keene Grp., Inc. v. City of Cincinnati*, 998 F.3d 306, 317 (6th Cir. 2021).