RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 22a0087p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

ANDREW ALLEN MEEK,

*Defendant-Appellant*.

No. 21-3588

─────────────────

Appeal from the United States District Court for the Northern District of Ohio at Youngstown.
No. 4:20-cr-00269-1—Sara E. Lioi, District Judge.

Decided and Filed:  April 26, 2022

Before:  GUY, THAPAR, and READLER, Circuit Judges.

─────────────────

### COUNSEL

**ON BRIEF:**  Travis A. Rossman, ROSSMAN LAW, PLLC, Barbourville, Kentucky, for Appellant.  Daniel R. Ranke, UNITED STATES ATTORNEY'S OFFICE, Cleveland, Ohio, for Appellee.

─────────────────

### OPINION

─────────────────

CHAD A. READLER, Circuit Judge.  Andrew Meek appeals his 87-month sentence for two child pornography offenses.  He says that the district court erred by withholding a two-level reduction in his offense level under U.S.S.G. § 2G2.2(b)(1), and by imposing a $5,000 special assessment for each count of conviction.  We disagree and affirm Meek's sentence.

I.

Meek was fired from his job when "pictures of young girls in underwear, and clothed" were discovered on his work computer. Losing his job, however, became the least of Meek's concerns. Upon receiving a tip from Meek's former co-worker, FBI agents verified that Meek's email contained clothed and partially clothed images of girls ages five to fourteen. Agents also found eight images and two videos of child pornography on Meek's other electronic devices. Meek admitted to viewing child pornography for nearly a decade. And he also confessed to downloading child pornography from peer-to-peer file sharing networks such as LimeWire, adding that he may have inadvertently shared and traded it too.

A federal grand jury indicted Meek for receiving and distributing child pornography in violation of 18 U.S.C. § 2252(a)(2) and possessing child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B). Meek pleaded guilty. At sentencing, he asserted that he should receive a two-level reduction in his offense level pursuant to U.S.S.G. § 2G2.2(b)(1) because his conduct was limited to receiving or soliciting child pornography. The district court disagreed and settled on a Guidelines range of 97 to 121 months' imprisonment. From there, the court varied downwards, sentencing Meek to 87 months' imprisonment. It also ordered Meek to pay two mandatory $5,000 special assessments (one for each count of conviction) pursuant to the Justice for Victims of Trafficking Act, 18 U.S.C. § 3014.

II.

Meek challenges his sentence on two grounds. One, that the district court should have applied the § 2G2.2(b)(1) reduction. And two, that the district court erred by not considering his ability to pay before imposing the $10,000 in special assessments.

*Section 2G2.2(b)(1) Reduction.* To qualify for § 2G2.2(b)(1)'s two-level reduction, a defendant must make three showings, each by a preponderance of the evidence. *United States v. Shepard*, 661 F. App'x 348, 351 (6th Cir. 2016). First, he must have a base offense level of 22. U.S.S.G. § 2G2.2(b)(1)(A). Second, his conduct must have been limited to "receipt or solicitation of material involving the sexual exploitation of a minor." *Id.* § 2G2.2(b)(1)(B). And third, he must not have "intend[ed] to traffic in, or distribute, such material."

*Id.* § 2G2.2(b)(1)(C). Although the district court's ultimate Guidelines calculation is a legal question we review de novo, we review the underlying factual findings for clear error. *United States v. Hodge*, 805 F.3d 675, 678 (6th Cir. 2015). That latter manner of review is highly deferential to the district court; we will reverse only if on the entire evidence we have "the definite and firm conviction that a mistake has been committed." *United States v. Fleischer*, 971 F.3d 559, 567 (6th Cir. 2020) (internal quotation marks omitted).

We see no error in the district court's denial of the § 2G2.2(b)(1) reduction. While Meek has a base offense level of 22, he fails to meet the second benchmark necessary for a § 2G2.2(b)(1) reduction. Three admissions from Meek permitted the district court to conclude that Meek's conduct was not limited to the "receipt or solicitation of material involving the sexual exploitation of a minor." During an interview with investigators, Meek admitted to using LimeWire at one point to download child pornography during the ten-year period charged in the indictment, an indication that Meek had the opportunity to distribute child pornography through LimeWire. That admission alone customarily is sufficient to support the denial of a § 2G2.2(b)(1) reduction. *See Shepard*, 661 F. App'x at 354; *United States v. Conner*, 521 F. App'x 493, 500 (6th Cir. 2013); *United States v. Bolton*, 669 F.3d 780, 782–83 (6th Cir. 2012) (per curiam); *United States v. Pizzino*, 419 F. App'x 579, 582 (6th Cir. 2011); *United States v. Darway*, 255 F. App'x 68, 71–72 (6th Cir. 2007). Likewise, at his sentencing hearing, Meek denied intending to distribute child pornography and claimed he had "made every attempt" to "actively shut off" LimeWire's "automatic sharing" to be "sure that [he] was not . . . sharing it," a tacit admission that sharing was possible at some point when he used LimeWire. And Meek told investigators that he may have inadvertently shared or traded child pornography, a hint that Meek may have made that pornography accessible to others. From this record, we have no "definite and firm conviction" that the district court erred in determining that Meek's conduct was more extensive than the mere "receipt or solicitation" of child pornography. *Fleischer*, 971 F.3d at 567; U.S.S.G. § 2G2.2(b)(1).

Meek opposes this result on two grounds. Acknowledging that he used LimeWire to download child pornography, Meek nonetheless contends that the government failed to introduce specific evidence that he shared that illicit material. Meek's admissions alone, however,

permitted the district court to reject the reduction in offense level. Meek next argues that the district court "implicitly recognized" that he did not distribute child pornography when it sustained his objection to a distribution enhancement under § 2G2.2(b)(3)(F). True, it is "somewhat unusual" for a district court to withhold a § 2G2.2(b)(1) reduction while also declining to impose a § 2G2.2(b)(3) distribution enhancement. *See Shepard*, 661 F. App'x at 351. Yet a defendant "is not necessarily entitled" to the former just because he did not receive the latter. *Id.* at 353–54 (citing *Hodge*, 805 F.3d at 684; *United States v. Fore*, 507 F.3d 412, 415–16 (6th Cir. 2007)). The two provisions cover separate conduct, meaning denying one does not require imposing the other. For today's purposes, application of § 2G2.2(b)(1) turns on whether Meek's conduct was limited to mere receipt or solicitation of child pornography as opposed to, say, distribution or production. And the application of § 2G2.2(b)(3)(F), on the other hand, turns on whether he "*knowingly* engaged in distribution." *See also United States v. Abbring*, 788 F.3d 565, 567–68 (6th Cir. 2015). In other words, it is conceivable that a defendant could unknowingly distribute child pornography, making him ineligible for both a § 2G2.2(b)(1) reduction and a § 2G2.2(b)(3)(F) enhancement. *See Hodge*, 805 F.3d at 684; U.S.S.G. § 2G2.2 cmt. n.2. That was the district court's conclusion here. We agree.

*JVTA Special Assessment.* Meek also claims that the district court erred in imposing a $10,000 special assessment under 18 U.S.C. § 3014. As Meek did not challenge that assessment before the district court, we review for plain error. *See United States v. Wandahsega*, 924 F.3d 868, 889 (6th Cir. 2019) (quoting *United States v. Vonner*, 516 F.3d 382, 385 (6th Cir. 2008) (en banc)); *see also* Fed. R. Crim. P. 52(b). Doing so requires Meek to demonstrate (1) an error that was (2) "obvious or clear," (3) detrimental to his "substantial rights," and (4) "affected the fairness, integrity, or public reputation of the judicial proceedings." *Vonner*, 516 F.3d at 386 (quoting *United States v. Gardiner*, 463 F.3d 445, 459 (6th Cir. 2006)).

Meek's convictions arose under title 18, chapter 110 of the United States Code. *See* 18 U.S.C. §§ 2252(a)(2), 2252A(a)(5)(B). Section 3014 in turn requires district courts to impose a $5,000 special assessment "on any non-indigent person . . . convicted of an offense" under chapter 110. For a non-indigent defendant guilty of a qualifying offense, the assessment is

mandatory. *United States v. Shepherd*, 922 F.3d 753, 757 (6th Cir. 2019). But the assessment may not be levied against an indigent defendant. *Id.*

So how does a district court go about determining indigency? By considering both (1) whether the defendant currently is impoverished and (2) whether the defendant has "the means to provide for himself so that he will not always be impoverished[.]" *Id.* at 758. With predicting the future an imperfect science, district courts should weigh several factors in deciding whether a defendant "will not always be impoverished." *Id.* They include: whether the defendant has court-appointed counsel; the defendant's educational and vocational training and the associated earnings potential, including the ability to earn income while incarcerated; the defendant's expected age at release; the defendant's potential years of employability after release; and the length of time post-release that the defendant will have to pay the special assessment. *See id.* at 759–60; *Wandahsega*, 924 F.3d at 889. A district court need not make an "explicit finding" of non-indigency before imposing the assessment. *Shepherd*, 922 F.3d at 760. It is enough that the "judge listened to each argument, considered the supporting evidence, was fully aware of the defendant's circumstances, and took them into account in sentencing him." *Id.* (cleaned up).

Application of these factors confirms that the district court properly imposed the § 3014 special assessment. At sentencing, the district court explained that it had reviewed Meek's financial situation as detailed in the presentence investigation report. That information suggested that, at least in the short term, Meek would be challenged to pay the special assessments. He was unemployed (due to his incarceration), had court-appointed counsel, no monthly income, a very modest checking account, and personal liabilities including a $7,000 vehicular loan, $5,000 in personal loans, and approximately $50,000 in student loan debt. But we must also consider Meek's long-term ability to support himself. *See Shepherd*, 922 F.3d at 758. On that score, Meek is a college graduate who has worked in a number of fields, including as a certified armed security guard and ordained minister, earning more than $2,000 per month before his arrest. As the district court put it, Meek "is a hard worker" who "has been employed all of his adult life." With this strong track record, we expect that Meek will resume these efforts upon his projected release in July 2026, when he will be 54. *See Find An Inmate*, Bureau of Prisons,

https://www.bop.gov/mobile/find_inmate/byname.jsp#inmate_results (last accessed Apr. 25, 2022) (search "Andrew Meek").  And because he was in good health when sentenced and has no dependents, it is a fair assumption that Meek could pay the § 3014 assessment within the 20-year statutory window, in part, through income earned while he is incarcerated.  *See United States v. King*, 466 F. App'x 484, 489–90 (6th Cir. 2012).  Under any standard of review, Meek fits comfortably within the realm of defendants whom we have deemed to be not indigent. *See United States v. Olmstead*, No. 21-1051, 2021 WL 5014358, at *3 (6th Cir. Oct. 28, 2021) (collecting cases).

Meek makes much of the district court's decision to waive a separate fine because Meek was unable to pay it.  Doing so, however, "does not change our analysis."  *See Shepherd*, 922 F.3d at 759 n.1.  If anything, the district court's decision to waive a separate fine is consistent with a current inability to pay and leaves Meek better positioned to pay the § 3014 assessments.  The district court could have waived the fine precisely because it levied the § 3014 assessments.  We are thus satisfied that the district court "was fully aware of [Meek's] circumstances and took them into account in sentencing him."  *Id.* at 760 (cleaned up).

Invoking *United States v. Fowler*, 956 F.3d 431, 438 (6th Cir. 2020), Meek lastly contends that the district court committed plain error because it made no specific findings about his indigency.  But both *Shepherd* (on de novo review) and *Wandahsega* (on plain error review) rejected the argument that a district court must specifically find the defendant not indigent before imposing the § 3014 special assessment.  *Shepherd*, 922 F.3d at 760; *Wandahsega*, 924 F.3d at 888.  Rather, we held that § 3014 "requires no such finding" when, as here, the record shows that the district court considered the relevant facts and arguments.  *Shepherd*, 922 F.3d at 760; *see also Wandahsega*, 924 F.3d at 888.

After *Shepherd* and *Wandahsega*, we decided *Fowler*, the case Meek emphasizes. *Fowler*, to its credit, began by acknowledging that *Shepherd* and *Wandahsega* "constitute binding case law."  956 F.3d at 439.  From there, however, the opinion veered off on a course at odds with those earlier cases.  For example, *Fowler* instructed that a district court must "ensure that the defendant is not indigent" even when the defendant does not challenge the § 3014 special assessment, *id.*, a conclusion that fails to honor "binding case law" holding that because the

§ 3014 special assessment "is akin to a fine," a defendant seeking to avoid the special assessment bears the burden of proving his indigence, *see Wandahsega*, 924 F.3d at 889 (citing U.S.S.G. § 5E1.2). Likewise, *Fowler* found plain error in the fact that the district court there "fail[ed] to make any findings on indigency or Fowler's ability to pay," 956 F.3d at 438, despite *Wandahsega*'s instruction that factual findings as to non-indigence are unnecessary "where it can be inferred that the district court considered the defendant's ability to pay and other factors required by law," 924 F.3d at 888 (citation omitted). On these points, *Fowler* is not binding in our Circuit. Our familiar practice in instances where "a later decision of this court conflicts with one of our prior published decisions" is to leave our Court "bound by the holding of the earlier case," *Darrah v. City of Oak Park*, 255 F.3d 301, 310 (6th Cir. 2001), a conclusion we have previously acknowledged is true as to the conflicts created by *Fowler*, *see United States v. Goodin*, 815 F. App'x 860, 870 n.3 (6th Cir. 2020) (noting that "to the extent *Fowler* requires the district court to make specific findings on the record as to the facts surrounding a defendant's indigency, it is at odds with our decisions in *Shepherd* and *Wandahsega*" and "those earlier opinions are binding"). One panel of this Court, in other words, cannot overrule another, let alone two others. *See United States v. McKinnie*, 24 F.4th 583, 589 (6th Cir. 2022).

Setting aside *Fowler*'s command that the district court make specific findings on indigency, at most *Fowler* holds that a "district court plainly err[s] . . . by failing to address [a defendant's] finances and ability to pay before imposing the assessment." *See* 956 F.3d at 440. But courts must apply that language harmoniously with *Wandahsega*'s pronouncement that "where it can be inferred that the district court considered the defendant's ability to pay and other factors required by law," the district court may impose the special assessment even in the absence of factual findings regarding non-indigence. 924 F.3d at 888 (citation omitted); *see also Shepherd*, 922 F.3d at 760. And courts must similarly apply *Wandahsega*'s holding that the burden of raising and establishing indigency falls squarely in the defendant's lap. *See* 924 F.3d at 889–90.

Read against the backdrop of *Shepherd* and *Wandahsega*, we conclude that *Fowler*'s "failing to address" language refers to a case where the district court "completely" failed to consider the defendant's ability to pay. 956 F.3d at 438. Indeed, *Fowler* distinguished itself

from both *Shepherd* and *Wandahsega* on the facts, noting that neither case had resolved whether a district court plainly errs by "fail[ing] completely" to consider the defendant's financial circumstances. *Id.* at 439. *Fowler* arose in a unique setting, where the district court "did not entertain arguments, consider evidence, or say anything to indicate that it took the defendant's circumstances into account" before imposing the assessment. *Id.* at 440. Nor was there any mention in *Fowler* that the district court had reviewed the relevant financial information from the defendant's presentence report. *See id.* at 439–40.

As a practical matter, one would expect that cases like *Fowler* are few and far between. A presentence report, after all, must include "the defendant's financial condition." Fed. R. Crim. P. 32(d)(2)(A)(ii). And district courts customarily review the presentence report and frequently adopt the report's factual findings. That practice seemingly underlies our decisions in *Shepherd* and *Wandahsega*, which inferred that the district court had considered the presentence report's factual account of the defendant's finances. *See Shepherd*, 922 F.3d at 759–60; *Wandahsega*, 924 F.3d at 889. In the ordinary case, then, we ask, as we did in *Shepherd* and *Wandahsega*, whether the district court has "done its duty" by familiarizing itself with the defendant's financial circumstances and "[taking] them into account." *See Shepherd*, 922 F.3d at 760; *see also Wandahsega*, 924 F.3d at 888. Here, the district court stated on the record that it had reviewed the presentence report's description of Meek's financial situation and adopted those facts in the statement of reasons attached to the judgment. We are satisfied that the district court was well aware of Meek's financial circumstances, and that its imposition of the special assessment is in line with both *Shepherd* and *Wandahsega*.

All said, we see no plain error by the district court.

\* \* \* \* \*

We affirm.