In the

# United States Court of Appeals
## For the Seventh Circuit

_____

No. 22-1473

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

CASH R. OTRADOVEC,

*Defendant-Appellant.*

_____

Appeal from the United States District Court for the
Western District of Wisconsin.
No. 3:21-cr-44 — **James D. Peterson**, *Chief Judge.*

_____

ARGUED DECEMBER 2, 2022 — DECIDED JULY 6, 2023

_____

Before EASTERBROOK, SCUDDER, and LEE, *Circuit Judges.*

SCUDDER, *Circuit Judge.* In 2015 Congress enacted 18 U.S.C.
§ 3014 and thereby directed certain "non-indigent" sex of-
fenders to pay a $5,000 special assessment within twenty
years from the entry of criminal judgment or their release
from imprisonment. This appeal requires us to decide what it
means to be "indigent" within the meaning of the statute.
Consistent with the approach of every other circuit to con-
sider the issue, we hold that indigency covers two things:

eligibility for appointed counsel and the financial capacity to provide for oneself. Under the second meaning of indigency, district courts should consider a defendant's financial prospects for repaying the special assessment in future years. We therefore vacate and remand for the district court to apply this analysis to Cash Otradovec.

**I**

**A**

Otradovec pleaded guilty in 2021 to producing child pornography in violation of 18 U.S.C. § 2251, an offense subject to the $5,000 special assessment under § 3014. At sentencing he contended that his financial condition at the time rendered him indigent for purposes of § 3014. He explained that he had spent the last of his money paying for a private attorney, although he qualified for appointed counsel. So he believed that the special assessment did not apply to him. But the government disagreed. Taking a broader view of Otradovec's financial situation, the government focused on his future prospects and underscored that his college degree, military service, and consistent work history would probably allow him to secure a job after his release—making him non-indigent for purposes of the statute.

Without explaining how it considered Otradovec's present and future financial condition, the district court imposed the special assessment and fashioned a payment plan requiring Otradovec to pay $100 a month starting after his release. The court explained that it had a "hard time finding indigency here," although it acknowledged that Otradovec could not afford to pay other criminal fines.

On appeal, Otradovec insists that the proper analysis should have been much more limited—he was indigent because he was eligible for appointed counsel at the time of sentencing. The government, as it did in the district court, urges an interpretation of indigency that would allow district courts to consider an offender's future earnings capacity. The government has the better argument under the language and structure of § 3014.

B

We begin with a word on the proper standard of review. The government suggests that we treat Otradovec's arguments as forfeited because he did not articulate below the definition of indigency that he now advances. But Otradovec objected to the special assessment in the district court and did so on the same essential grounds—his present financial condition—that he presses on appeal. Nothing prevents Otradovec from amplifying and elaborating on appeal a properly preserved argument. See *Lawson v. Sun Microsystems, Inc.*, 791 F.3d 754, 761 (7th Cir. 2015). So we decline to review his appeal for plain error and instead take our own independent look at the statute.

Section 3014(a) provides that district judges "shall assess an amount of $5,000 on any non-indigent person or entity convicted of [a covered offense]." 18 U.S.C. § 3014(a). The statutory formulation is odd: Congress not only left the key term undefined but also employed a negative formulation in using the term "non-indigent" rather than "indigent." But determining what it means to be non-indigent, or not indigent, requires us to first determine what it means to be indigent. So we start there, interpreting the term "indigent" according to its "'ordinary, contemporary, common meaning' … when the

statute was enacted." *United States v. Melvin*, 948 F.3d 848, 852 (7th Cir. 2020) (quoting *Sandifer v. U.S. Steel Corp.*, 571 U.S. 220, 227 (2014)).

Contemporary dictionaries offer two meanings. People are indigent if they are eligible to receive appointed counsel and other official assistance. They are also indigent if, on a more general level, they "lack[ ] the means of subsistence." *Indigency*, *Black's Law Dictionary* (11th ed. 2019) (providing both definitions); see also *Indigence*, *Oxford English Dictionary* (3d ed. 2022) (same). Although the first definition grounds itself in the defendant's current financial condition, the second—by homing in on the defendant's capacity to subsist— looks to the future. See *United States v. Graves*, 908 F.3d 137, 141 (5th Cir. 2018) ("The ordinary meaning of 'indigent' therefore includes … someone who lacks the means to earn the necessaries of life in the future.").

We hold that district courts should consider both definitions, asking whether the defendant is eligible for appointed counsel at the time of sentencing and whether the defendant generally lacks the resources to provide for himself going forward. The ultimate question is whether the defendant can pay the special assessment now or over the 20-year statutory period. If he can—because the facts show he is non-indigent under one or both meanings of the term—then the district court must impose the assessment. Every other circuit to consider the issue has similarly held that district courts can consider future earnings capabilities when assessing whether a defendant is indigent within the meaning of § 3014(a). See *United States v. Rosario*, 7 F.4th 65, 70 (2d Cir. 2021) (adopting a forward-looking definition of indigency and collecting cases

from the Fourth, Fifth, Sixth, Eighth, Ninth, and Tenth Circuits).

Section 3014 itself supplies additional support for our interpretation of what it means to be indigent. Congress allowed a 20-year period for defendants to pay the special assessment. See 18 U.S.C. § 3014(g) (incorporating the 20-year period set forth in 18 U.S.C. § 3613(b)). The availability of a lengthy payment period suggests that district courts should consider the future: the relevant inquiry, after all, is whether the defendant will have the means to pay the full $5,000 assessment over the next two decades. See *United States v. Shepherd*, 922 F.3d 753, 758 (6th Cir. 2019) ("Because the defendant's obligation to pay persists for at least twenty years after his sentencing, it would make little sense for the district court to consider *only* the defendant's financial condition at the time of sentencing." (emphasis in original)).

Section 3014 also specifies that the assessment "shall … be collected in the manner that fines are collected in criminal cases." 18 U.S.C. § 3014(f). In the context of criminal fines, district courts consider whether a defendant is or is not "likely to become able to pay any fine." U.S.S.G. § 5E1.2(a). The same forward-looking consideration is appropriate here.

Nothing we have said invites freewheeling guesswork about a defendant's financial prospects. Section 3014 requires taking a practical and realistic view of a defendant's financial condition and earnings capacity, grounded in the education, skills, work experience, or assets the defendant has today. Assessing human capital in this way is not a forbidden form of speculation. To be sure, not every defendant with an education or employment history will be able to continue providing for himself following a serious conviction qualifying for the

special assessment under § 3014. See 18 U.S.C. § 3014(a) (applying the special assessment to defendants convicted of human trafficking, sexual abuse, and sexual exploitation of children, among others). Nor do we limit the district court's discretion to fashion fair payment plans for defendants, such as the monthly installments the district court imposed in this case.

C

Otradovec urges a different interpretation. He maintains that the word "indigent" is now primarily used to describe persons who are eligible for appointed counsel, no matter their future financial prospects. The forward-looking definition of indigency, Otradovec contends, fell by the wayside before Congress enacted § 3014. In his view, then, district courts should limit themselves to assessing a defendant's current financial state and, even more specifically, the ability to afford counsel.

Otradovec may be right that the counsel-based definition of indigency reflects the more common usage of the term. But that observation does not preclude an understanding of the term aligned with the more general, poverty-based definition of indigency. Put differently, Otradovec has not explained why Congress did not use indigency in § 3014 to refer to *both* eligibility for appointed counsel and a general state of poverty.

Otradovec stands on firmer ground comparing § 3014 to 18 U.S.C. § 2259A. Section 2259A imposes a special assessment on certain child pornography offenders. Congress expressly provided in § 2259A that district courts "shall consider" the factors set forth in 18 U.S.C. § 3572, including the

defendant's earning capacity. 18 U.S.C. § 2259A(c); see also 18 U.S.C. § 3572(a)(1). According to Otradovec, Congress would have included the same, express direction in § 3014 if it intended for district courts to consider the same factors.

We are not convinced. To be sure, no other circuit has considered the salience of § 2259A. And Otradovec rightly emphasizes that Congress's failure to use similar language in § 3014 is all the more striking when we consider that Congress requires defendants to pay the fines due under § 2259A before paying the § 3014 assessment. See 18 U.S.C. § 3014(b). But nothing prevents Congress from using different words in different statutes to direct a similar inquiry. And that is what Congress did by imposing the special assessment in § 3014(a) on non-indigent defendants, while also expressly directing district courts to consider earnings capacities for the special assessment in § 2259A.

Given the ordinary meaning of indigency and Congress's allowance of a 20-year payment period, we believe district courts should consider a defendant's financial condition at sentencing and earnings capacity in determining whether to impose the $5,000 special assessment otherwise required by § 3014(a).

## II

### A

Returning to Otradovec's case, we are not certain what definition of indigency the district court considered. Recall that Otradovec maintained he was indigent because, by the time his case reached sentencing, he had exhausted his assets to pay for a private attorney. The government, for its part, stressed that Otradovec was capable of supporting himself in

the future. Although the district court ultimately imposed the assessment, its reasons for doing so are unclear. At the outset the court found that Otradovec did not have the means to pay other fines without impairing his ability to support himself. The court also suggested that Otradovec might be indigent because his few assets "went to his defense." When the court imposed the assessment, it said only that it had "a hard time" concluding that Otradovec was indigent. In short, it is uncertain what the district court understood the term "non-indigent" to mean and whether, if the district court considered Otradovec's future earnings capacity, it did so within the bounds described here.

In these circumstances, remand is appropriate to allow the district court to consider whether to impose the special assessment under the standards articulated in this opinion. We accordingly VACATE and REMAND, leaving it to the sound discretion of the district court to apply this analysis to Otradovec.